# FIRST STATE BANK OF SHELBY, Appellant, v. BOTTI-NEAU COUNTY BANK et al., Respondents.

(No. 4,030.)

(Submitted September 18, 1919; Decided October 30, 1919.)

[185 Pac. 162.]

*Public Lands—Enlarged Homestead Act—Construction—Statutes—"Supplemental Act"—Injunction—Jurisdiction—Demurrer.*

Injunction—Judicial Sale—Jurisdiction—Demurrer.
1. Where the purpose of an action by a bank was to restrain a sale of property bought by it from a judgment debtor, and not to enjoin the enforcement of the judgment against the latter or any of his property, a demurrer on the ground that the court was without jurisdiction of the subject matter of the action was without merit.

Public Lands—Enlarged Homesteads—Nonliability for Debts of Homesteader.
2. *Held,* that a 320-acre homestead acquired under the Enlarged Homestead Act (35 Stats. at Large, 639) is not liable for debts of the homesteader contracted prior to issuance of patent.

Same—Homestead Act—Purpose of Legislation.
3. The original Homestead Act (12 Stat. 392) was designed solely for the benefit of the grantee and his family—not for that of his antecedent creditors.

Statutes—Modes of Amendment.
4. In the absence of constitutional limitations, a statute may be amended by merely striking out portions of it, by inserting new provisions, by striking out portions and inserting new matter, or by adding new provisions.

Federal Statutes—Amendments.
5. Whether a federal statute is or is not an amendment to an existing statute must be determined by the intention of the Congress.

[As to scope of amendments to statutes, see note in 86 Am. St. Rep. 269.]

Public Lands—Enlarged Homestead Act Supplementary to Original Homestead Act.
6. *Held,* that the Enlarged Homestead Act is supplementary to the original homestead law, and must be construed as a part of it; hence land acquired under it cannot become liable to the satisfaction of any debt contracted by the homesteader prior to the date patent issued.

Statutes and Statutory Construction—Supplemental Acts—Definition.
7. A supplemental Act is one designed to improve an existing statute, by adding something thereto without changing the original text; such Acts include every species of amendatory legislation designed to complete a legislative scheme.

Public Lands—Homestead—Nonliability for Homesteader's Debts—Nature of Provision.
    8.  *Held,* that section 2296, United States Revised Statutes, declaring that land acquired under the homestead law shall not be liable for debts contracted before issuance of patent, is not, strictly speaking, an exemption statute making it incumbent upon the party claiming the immunity to show that he comes clearly within its provisions, but the nonliability provided for therein was intended as one of the conditions attached to the grant as an additional inducement to secure settlement of the public domain.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

. Action by the First State Bank of Shelby against the Bottineau County Bank and another. Judgment of dismissal, and plaintiff appeals. Reversed and remanded.

*Mr. Jesse G. Henderson* and *Messrs. Freeman & Thelen,* for Appellant, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

*Mr. H. S. Kline* and *Mr. C. B. Elwell,* for Respondents, submitted a brief; *Mr. Kline* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On July 25, 1913, Charles R. Wilbur made final proof upon 320 acres of land which he had theretofore entered under the Enlarged Homestead Act. On July 30, 1913, the Bottineau County Bank recovered judgment against Wilbur in the district court of the twelfth judicial district in and for Hill county, and a certified copy of the transcript of the original docket was filed in Toole county, where the land above mentioned is located. In January, 1914, Wilbur received patent, and on April 15, 1914, sold and conveyed the land by warranty deed to the First State Bank of Shelby. In November, 1914, the Bottineau County Bank caused execution to be issued on its judgment, placed the same in the hands of the sheriff of Toole county, who levied upon the land and advertised it for sale. The First

State Bank of Shelby thereupon commenced this action in the district court of the eighth judicial district, to secure an injunction restraining the judgment creditor and the sheriff from proceeding with the sale.

To the complaint, which sets forth the history more in detail, the defendants interposed a demurrer, first, upon the ground that the court did not have jurisdiction of the subject matter of the action; and, second, upon the ground that the complaint did not state a cause of action.  The court sustained the demurrer as to the second ground, indicating in its order that a 320-acre homestead acquired under the Enlarged Homestead Act is liable for the debts of the homesteader contracted before patent issues.  Plaintiff, declining to plead further, suffered a judgment of dismissal to be entered against it and appealed.

There is no merit in the first ground of the demurrer.  The [1] purpose of this action is to restrain the sale of plaintiff's property to satisfy a judgment against Wilbur, and not to restrain the enforcement of the judgment against Wilbur or against any property he may have.

This appeal presents the novel question: Is a 320-acre home- [2] stead liable for the debts of the homesteader contracted prior to the issuance of patent?  If this question is to be answered in the affirmative, then the judgment became a lien upon the land in controversy while owned by Wilbur, and the Shelby Bank acquired its title subject to that lien, and is not entitled to the relief sought.  If the question is to be answered in the negative, then the complaint states a cause of action for the relief demanded.

Under the original Homestead Act of May 20, 1862, Chap. 75 (12 Stat. 392), as it has existed from the date of its enactment to the present time, the land acquired thereunder (160 acres) cannot "in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." (Sec. 2296, U. S. Rev. Stats. [U. S. Comp. Stats., sec. 4551].)  There cannot be a controversy over the purpose which the Congress had in enacting that statute.  It was designed to provide

the homesteader and his family sufficient land upon which to make a home (*Ruddy* v. *Rossi*, 248 U. S. 104, 63 L. Ed. 148, 39 Sup. Ct. Rep. 46), and to secure that land against the homesteader's prior misfortune or improvidence (*Anderson* v. *Carkins*, 135 U. S. 483, 34 L. Ed. 272, 10 Sup. Ct. Rep. 905). It **[3]** was designed solely for the benefit of the grantee and his family, and not for the benefit of antecedent creditors. (*Lewton* v. *Hower*, 18 Fla. 872.)

During most of the period when the homesteader might secure 160 acres under the original Homestead Act, he might also secure 160 acres under the Pre-emption Act, and an additional 160 under the Timber Culture Act, making in all 480 acres practically of his own selection, and that, too, land for the most part susceptible of successful cultivation without artificial irrigation. Under these favorable statutes the public domain of the Mississippi Valley and the humid regions of the Pacific Coast were settled. It is a part of the public history of our country that during the forty years succeeding the enactment of the original homestead law, the best of the public lands were entered upon and title thereto secured from the government, leaving the later homeseeker to make his selection only from lands in semi-arid regions and lands so rough and broken that but a comparatively small portion of entryable units could be cultivated. In other words, it came to require more than 160 acres of the lands available to entry, to make a home upon which the entryman could reasonably expect to succeed. In the meantime the Pre-emption and Timber Culture Acts were repealed, leaving only the original homestead law under which public land might be acquired, and the area limited to 160 acres. These facts, greatly enlarged upon and emphasized in an extended message by the President, were presented to the first session of the Sixtieth Congress, and bills looking to the enlargement of the area obtainable under the homestead laws were introduced. The history of those measures and subsequent bills having the same general purpose is too extensive to be recited here. It is sufficient to say that the outcome of the agitation was the Enlarged

Homestead Act of February 19, 1909, Chap. 160 (35 Stats. at Large, 639 [U. S. Comp. Stats., secs. 4563–4568]). As originally enacted, the statute applied only to the nonmineral, nontimbered, nonirrigable, unreserved, unappropriated surveyed public lands in Colorado, Montana, Nevada, Oregon, Utah, Washington, Wyoming, Arizona, and New Mexico, designated by the Secretary of the Interior as not being, in his opinion, susceptible of successful irrigation, at a reasonable cost, from .any known source of water supply. By subsequent amendments the Act became applicable to the same class of lands in other western states.

The Act is entitled: "An Act to provide for Enlarged Homesteads." It contains but six sections. Section 1 defines the lands subject to entry under the Act. Section 2 provides that a person applying to make entry shall furnish the affidavit required by section 2290 of the United States Revised Statutes, and in addition shall make affidavit that the land sought is of the character described in section 1. Section 3 provides for an entry additional to one already made at the time the Act went into effect, in order that the entryman might secure the full amount—320 acres. Section 4 provides that in addition to the final proof required under section 2291, United States Revised Statutes, the entryman shall disclose that he has cultivated the required area. Section 5 declares that the provisions of this Act shall not be construed to prevent a qualified homesteader from making entry under the original homestead Act in any of the states named, but that a person who makes entry under the Act of 1909 shall not be entitled to make entry under the original Act. Section 6 relates only to the state of Utah. It will be seen at once that the Enlarged Homestead Act does not in terms change any of the provisions of the original Act. The determination of the principal question before us, therefore, depends upon the proper construction of the Enlarged Homestead Act with reference to the original Act.

Was it intended as an independent statute, or was it meant to become a part of the original Homestead Act as it existed at

the time this new measure went into effect? . Aside from any other consideration, the bare reading of the Act of 1909 would seem to be sufficient to convince one that it could not have been intended as an independent Act. To illustrate: A prospective entryman cannot determine from this Act whether he is qualified to secure its benefits. He must refer to the original Act (sec. 2289, U. S. Rev. Stats. [U. S. Comp. Stats., sec. 4530]) for the qualifications required. He is not advised by this Act how to proceed. He must refer to the original Act (sec. 2290, U. S. Rev. Stats. [U. S. Comp. Stats., sec. 4531]). He is required by this Act to make an affidavit, but he is not informed what the affidavit must contain. Again he must refer to the original Act (sec. 2290, above) for the required information. He is advised by this Act that he must pay certain fees, but the amount of the fees is not disclosed. He may only ascertain the amount by referring again to the original Act (sec. 2290, above). He is informed by this Act of the amount of cultivation required before final proof, but he is not informed of anything further to be done by him; and if he depended upon this Act alone he could never make final proof or secure patent. The procedure is all contained in the original Act (sec. 2291, U. S. Rev. Stats. [U. S. Comp. Stats., sec. 4532]). It cannot be said that an Act so absolutely dependent upon a prior Act is an independent statute. (*State ex rel. Cuneo* v. *Board,* 16 Ohio C. C. 218.)

In the absence of constitutional limitations, a statute may [4] be amended merely by striking out portions of it, by inserting new provisions, by striking out portions and inserting new matter in lieu thereof, or by adding new provisions. (*Fletcher* v. *Prather,* 102 Cal. 418, 36 Pac. 658; 36 Cyc. 1054; 26 Am. & Eng. Ency. of Law, 706.) There are practically no constitutional restrictions imposed upon the Congress as to the methods to be pursued in enacting statutes. Even the title of a federal statute is not always a controlling, or even persuading, consideration in construing the Act. (*United States* v. *Union Pac. R. R.,* 91 U. S. 72, 23 L. Ed. 224.) It not infrequently

happens that a statute of the character of the one now under review is to be found attached as a rider to an appropriation [5] bill. Whether an Act is or is not an amendment to an existing statute must be determined by the intention of the Congress. (*Blake* v. *National City Bank*, 23 Wall. 307, 23 L. Ed. 119.)

If the Enlarged Homestead Act was intended as an amend- [6] ment to the prior homestead laws, then the Acts are to be construed as one—as originally in the amended form. The his- tory of this Act is fairly conclusive that it was never intended to be construed otherwise than as a part of the original home- stead law as it was then in force. Without quoting from the committee reports or the debates in the Congress, we think it is apparent from them that it was the intention of the law- makers by this Act to supplement the existing statutes—to im- prove the homestead laws and encourage the settlement of the vast areas of public lands in the semi-arid regions, by increas- ing the amount of land subject to entry, so that the homesteader in 1909, and thereafter, might acquire land approaching in value that of the more fortunate entryman who secured land which could be irrigated at reasonable cost, or land which could be cultivated successfully without irrigation, and which would pro- duce a crop every year.

A supplemental Act is one designed to improve an existing [7] statute, by adding something thereto without changing the original text. (*McCleary* v. *Babcock*, 169 Ind. 228, 82 N. E. 453; *Loomis* v. *Runge*, 66 Fed. 856, 14 C. C. A. 148.) Supple- mental statutes include every species of amendatory legislation which goes to complete a legislative scheme. (*Rahway Sav. Inst.* v. *Rahway*, 53 N. J. L. 48, 20 Atl. 756.)

Our conclusion is that the Enlarged Homestead Act is merely supplementary to the original homestead law, and is to be con- strued as a part of it. It follows that land acquired under it becomes subject to the provisions of section 2296 of the United States Revised Statutes (U. S. Comp. Stats., sec. 4551), and that the land in controversy in this action could not in any

56 Mont.—24

event become liable to the satisfaction of any debt contracted by Wilbur prior to the date his patent was issued.

Our attention has been called to but a single adjudication upon this subject. Judge Bourquin gave this same construction to the Enlarged Homestead Act. (*In re Auge* (D. C.), 238 Fed. 621.) It is said that the same conclusion was reached by the United States District Court for the District of North Dakota; but the opinion does not mention the fact that the homestead there involved was acquired under the Enlarged Homestead Act. (*In re Cohn* (D. C.), 171 Fed. 568.)

It is insisted by counsel for respondents that exemption from **[8]** liability for debts is a special privilege or immunity granted by statute; that liability is the rule and exemption the exception, and that the party claiming the immunity must be able to show that he comes clearly within the statute providing the exception. Granting that this is so, for the sake of argument, the rules have no application here.

Section 2296, United States Revised Statutes, is not, strictly speaking, an exemption statute. It was not enacted pursuant to the police powers of the government, but in virtue of the power conferred upon the Congress to dispose of the public lands. The nonliability declared by that section is one of the conditions attached to the grant as an additional inducement to secure settlement of the public domain. (*Ritzville Hdw. Co.* v. *Bennington,* 50 Wash. 111, 126 Am. St. Rep. 894, 96 Pac. 826.)

The judgment is reversed and the cause is remanded, with directions to the district court to overrule the demurrer.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Associate Justices Hurly, Patten and Cooper concur.