KELLER, RESPONDENT, v. FLANAGAN, SHERIFF, ET AL., APPELLANTS.

(No. 4,755.)

(Submitted January 4, 1923. Decided February 14, 1923.)

[213 Pac. 222.]

*Conversion—Federal Homesteads—Exemptions—Husband and Wife—Fraudulent Transfers—What are not—Trial—Instructions—Abstract Statements of Law. .*

Trial—Inapplicable Instructions—Proper Refusal.
 1. An offered instruction not conforming to the theory upon which appellant relied was properly refused as inapplicable.
Same—Instructions—Abstract Statements of Law—Proper Refusal, When.
 2. Refusal of an instruction embodying the statement of an abstract proposition of law without any attempt to connect it with the evidence in the case or with any rule laid down in other instructions, was proper.
Federal Homesteads—Exempt from Liability of Debts Contracted Prior to Patent.
 3. The provision of section 2296, United States Revised Statutes, that lands acquired under the Federal Homestead Act shall not be-

---

3. Construction of federal homestead statute as to antecedent debts, see notes in Ann. Cas. 1912D, 282; 8 A. L. R. 635, 848.
 Liability of claim or interest in public lands for debts contracted before issuance of patent, see notes in 34 L. R. A. (n. s.) 405.

come liable to the satisfaction of any debt contracted prior to the issuing of patent, applies to enlarged homesteads and to debts contracted after final entry, and before patent, as well as to debts contracted before final proof.

Same—Transfer of Proceeds to Wife—Exemption from Debts of Insolvent Husband, When.

4. Where the husband, before selling his federal homestead, transferred the major portion of the selling price to his wife in consideration of her joining with him in a deed therefor, he being then insolvent, the money was her own and the creditor of the husband was without right to have it attached in his suit against the husband for a debt contracted prior to the issuance of patent. (MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE GALEN dissenting.)

Fraudulent Transfers—Showing Required by Creditor.

5. Before a creditor can attack a transfer of property as in fraud of his rights, it is incumbent upon him to show that the property disposed of was such as might otherwise have been subjected to the satisfaction of his claim.

*Appeals from District Court, Chouteau County; John W. Tattan, Judge.*

ACTION by Eda Keller against Merritt Flanagan, Sheriff, and George Brundage, Deputy Sheriff, in and for the County of Chouteau, State of Montana, From a judgment for the plaintiff and an order denying a new trial, defendants appeal. Modified and affirmed.

*Messrs. O'Leary & Doyle,* and *Mr. C. A. Spaulding,* for Appellants, submitted a brief; *Mr. Wm. F. O'Leary* and *Mr. Spaulding* argued the cause orally.

It is true that many authorities hold that a release of the wife's right of dower in land is a sufficient consideration to support a transfer by the husband to the wife of other property as against the creditors, if made in good faith and not for the purpose of defeating the creditors of the husband and will be sustained as to creditors of the husband but only to the extent of the actual value of the dower released by the wife. (*Wright* v. *Standard,* Fed. Cas. No. 18094 (Brock 311) : *Hollowell* v. *Simonson,* 21 Ind. 398; *Ward* v. *Crotty,* 61 Ky. 59;

---

4. Agreement by husband that wife shall receive proceeds of sale of homestead as fraud on his creditors, see note in 6 A. L. R. 574.

5. Burden of proof that fraud against creditors in transfer from husband to wife, see note in 56 L. R. A. 823.

*Garvey* v. *Moore* (Ky.), 15 S. W. 136; *German Amer. Seminary* v. *Saenger*, 66 Mich. 249, 33 N. W. 301; *Smart* v. *Haring*, 14 Hun (N. Y.), 276; *Commonwealth Title Ins. & Trust Co.* v. *Brown*, 167 Pa. St. 463, 31 Atl. 681; *Quarles* v. *Lacy*, 4 Munf. (Va.) 251; *Blatant* v. *Taylor*, Gilm. (Va.), 209; *Taylor* v. *Moore*, 2 Rand. (Va.) 563; *Darling* v. *Hanks* (Ky.), 42 S. W. 1130; *David Addler & Sons Cloth Co.* v. *Hellman*, 55 Neb. 266, 75 N. W. 877.) However if the transaction was actually made in good faith in this instance between the husband and the wife and it should be construed that she had an agreement with her husband that he was to transfer to her the cattle involved in this case in consideration of her releasing her dower right in the land conveyed by the husband, then she would only have been entitled to the value of what her dower right might have been in the land, which in this instance could not have exceeded the sum of four or five hundred dollars as the equity of the husband in the land at that time was not worth more than the value of the cattle, which the jury found to be $1,675, and her dower right in that land therefore could not have been worth more than a third of that amount, and the transaction was fraudulent in any event as to the surplus and plaintiff should not have recovered for any greater amount.

Was the Keller homestead exempt from seizure to satisfy the Lewis claim? The land conveyed to Lehn was a United States homestead. Whether patent had been issued at the time of the transfer of the land or whether the claim of Lewis against Keller was one contracted prior to the issuance of patent or final receipt, the record does not disclose. The only exemption created by the United States statute relating to homesteads is an exemption as to the land for debts created prior to the issuance of patent. The great weight of authority holds that this means prior to the issuance of final receipt. (*Struby-Estabrook Merc. Co.* v. *Davis*, 18 Colo. 23, 36 Am. St. Rep. 266, 31 Pac. 495; *Leonard* v. *Ross*, 23 Kan. 292; *Ruddy* v. *Rossi*, 28 Idaho, 376, 154 Pac. 977; *Flannigan* v. *Forsythe*, 6 Okl. 225, 50 Pac. 152; *Hobb* v. *J. I. Case*

*Threshing Machine Co.,* 39 Okl. 383, 135 Pac. 395.)   In reality
the privilege accorded the homestead entryman, so far as
exemption from seizure of his homestead for antecedent
debts is concerned, is not strictly an exemption.   It is, as
the authorities hold, in the nature of a condition attached
to the grant and rests upon an entirely different principle
than a homestead exemption created by state statute.   What-
ever may have been the fact in the instant case as to the
date of issuance of patent, or as to the date of the creation
of the indebtedness from Keller to Lewis, it does not admit
of doubt that the proceeds derived from the sale of this home-
stead entry were not exempt from execution levy.   It was
so held in the case of *Ritzville Hardware Co.* v. *Bennington,* 50
Wash. 111, 96 Pac. 826.   This case has received the approval
of this court in the case of *First State Bank of Shelby* v. *Bot-
tineau,* 56 Mont. 363, 185 Pac. 162, particularly as to the so-
called exemption created by the United States statutes relating
to homesteads being a condition attaching to the grant rather
than an exemption.   It follows, therefore, that whether or not
the homestead entry of Keller could have been seized under
the Lewis execution, the proceeds derived therefrom were not
in any respect exempt from such seizure.

Should the doctrine announced in the following cases be
adopted here?   (*Wetherly* v. *Straus,* 93 Cal. 283, 28 Pac. 1045;
*Keyes* v. *Rines,* 37 Vt. 260, 86 Am. Dec. 707; *Bailey* v. *Littell,*
24 Nev. 294, 53 Pac. 308; *Schroeder* v. *Gohde,* 123 Minn. 459;
6 A. L. R,. note 571, 144 N. W. 152.)   This question should
be answered in the negative because the authorities cited have
no application to a homestead such as the one here under con-
sideration.   Those cases all relate to homesteads exempt under
state laws, which exemptions are absolute and unconditional
and find their justification under the police powers of the
state, exercised for the preservation and protection of the
head of the family and the family.   Such an exemption, being
absolute in character and attaching to property, which a
creditor can in no manner whatever interfere with, permits

the owner to transfer the property as he will, with or without consideration. In most states the proceeds derived from the sale of such a homestead are likewise statutorily exempt; and in most states, as in ours, the husband cannot convey the homestead without the wife's signature.

But even if the proceeds of the homestead in this case were exempt, there undoubtedly was a waiver of that exemption. Neither at the time the cattle were attached, nor at the time of the trial in the district court, nor in fact up to the present time has the respondent in this case ever contended that the property attached was exempt from seizure. When the property was attached she merely filed a claim with the sheriff to the effect that she owned the property by virtue of a transfer of her interest in the homestead of herself and husband. The homestead did not belong to her and her husband, but it belonged to her husband entirely with the exception at that time of her inchoate right of dower. She did not have such an interest in the homestead in this case that she would have had had the property been a statutory homestead. In her notice to the sheriff she made no claim that the proceeds of the homestead which were attached were exempt, or that exempt property had been traded for the cattle.

The right to claim property exempt is a personal privilege and may be waived. (*Tetrault* v. *Ingraham,* 54 Mont. 524, 171 Pac 1148; *Parsons* v. *Evans,* 44 Okl. 751, 145 Pac. 1122; *Wyman* v. *Gay,* 90 Me. 136, 60 Am. St. Rep. 238, 37 Atl. 325; *Stanton* v. *French,* 83 Cal. 194, 23 Pac. 355.)

One of the questions submitted by the court to counsel was: "If the transfer of the cattle to Mrs. Keller was open to attack by Lewis or defendants, was it not necessary for defendants to plead the fraud in order to rely upon it?" It is conceded that the general rule is that fraud must be pleaded in order to be proven; but this rule has no application as to the appellants in the instant case. Here the proof on the part of the respondent in chief disclosed the only fraud claimed to exist, namely, the turning over to her of the entire considera-

tion of this land for the release of her inchoate right of dower therein. The rule is well settled in this jurisdiction that proof on the part of a plaintiff introduced without objection is entirely sufficient to enlarge the scope of defendant's answer. (*Grum* v. *Barney,* 55 Cal. 254; *Mason* v. *Vestal,* 88 Cal. 396, 22 Am. St. Rep. 310, 26 Pac. 213; *Eaton* v. *Metz,* 5 Cal. Unrep. 59, 40 Pac. 947; *Banning* v. *Marleau,* 121 Cal. 240, 53 Pac. 692; *Summerville* v. *Stockton Milling Co.,* 142 Cal. 529, 76 Pac. 243.)

*Mr. W. S. Towner,* for Respondent, submitted a brief, and argued the cause orally.

Appellant admits in his brief "that in July, 1919, the plaintiff and her husband were residing upon a federal homestead in Chouteau county, Montana, upon which the husband had made final proof about the 1st of July, 1919," and the question as to the fact of the indebtedness of Keller to Lewis being contracted after July 1st, 1919, is not even intimated by appellants. Therefore, being a debt contracted prior to the issuance of patent, the debtor cannot subject said land to the payment of his debt. (*First Nat. Bk. of Shelby* v. *Bottineau County Bk.,* 56 Mont. 363, 185 Pac. 162.)

While the federal statute is not an exemption statute, strictly speaking, its purpose and effect as to debts contracted prior to issuance of patent is the same and if a creditor has no legal right to look to the property for the satisfaction of his debt the transfer of such property cannot be a fraud as to him. (See 12 R. C. L. 491, 505; *Cushing* v. *Quigley,* 11 Mont. 577, 29 Pac. 337; *Nicholdson* v. *Nesbitt,* 4 Cal. App. 585, 88 Pac. 725; also see *Yardley* v. *San Joaquin Valley Bank,* 3 Cal. App. 651, 86 Pac. 978; *In re Faith's Estate,* 132 Cal. 609, 64 Pac. 995; *Allen* v. *Hall,* 1 White & W. Civ. Cas. Ct. App. No. 1279 (Texas); *Blum* v. *Light,* 81 Tex. 414, 16 S. W. 1090; *Kershaw* v. *Willey,* 22 Okl. 677, 98 Pac. 908; *Smith* v. *Fourth Street Bank,* 174 Ky. 647, 192 S. W. 643.)

It is fundamental that fraud is not presumed and therefore, whenever it constitutes an element of a cause of action, which is of an affirmative nature, or is invoked as conferring a right, it must be alleged. (*In re Yoell's Estate,* 164 Cal. 540, 129 Pac. 999; *Weatherly* v. *Straus,* 93 Cal. 283, 28 Pac. 1045; *Burris* v. *Adams,* 96 Cal. 664, 31 Pac. 565; *Moore* v. *Coop,* 119 Cal. 429, 51 Pac. 630; *Roberts* v. *Burr* (Cal.), 54 Pac. 849; *Virginia Timber & Lumber Co.* v. *Glenwood Lumber Co.,* 5 Cal. App. 256, 90 Pac. 48.)

MR. JUSTICE STARK delivered the opinion of the court.

This is an action brought by the plaintiff against the defendant Flanagan, as sheriff of Chouteau county, and his deputy sheriff, Brundage, to recover damages for the conversion of certain cattle alleged to belong to plaintiff. The complaint alleges the official capacity of the defendants; that on July 14, 1919, plaintiff was the owner of twenty-five head of cattle, of the value of $1,675, and on said date the defendants under a writ of attachment issued out of the district court of Pondera county, in an action wherein F. F. Lewis was plaintiff and plaintiff's husband, Jacob Keller, was defendant, levied upon and took possession of plaintiff's cattle; that plaintiff demanded their return, which was refused, and that defendants converted them to their own use, depriving her thereof; that in pursuing said cattle she expended the sum of $150; that a portion of said cattle were milch cows, and that but for the acts of the defendants she would have produced and earned from said cows the sum of $335 per month from July 14, 1919. The prayer is for judgment against defendants for the value of the cattle, with special damages as above indicated.

The answer of defendants admits that they were officers of Chouteau county, as alleged in the complaint; then pleads the issuance of the writ of attachment and its levy upon the cattle, as alleged in the complaint, by which authority they held them; and alleges affirmatively that at the time of the levy the cattle belonged to Jacob Keller, and not to the plaintiff. The

affirmative allegations of the answer were put in issue by a reply.

The cause was tried to a jury, which returned a verdict in favor of the plaintiff for the sum of $1,675, the value of the cattle, $150 damages for expenses incurred by the plaintiff in pursuing the property, and the further sum of $425 as special damages. Judgment was entered in favor of the plaintiff in accordance with the verdict. Defendants moved for a new trial, which was denied, and these appeals are prosecuted from the judgment and the order overruling the motion for a new trial.

The proof introduced by the plaintiff at the trial showed that on and prior to July 9, 1919, the plaintiff and her husband, Jacob Keller, lived on a 320-acre federal homestead belonging to Jacob Keller, upon which he made final proof and obtained final receipt about July 1, 1919. There was no showing that patent to the homestead had been issued. Immediately after obtaining final receipt for the land, Jacob Keller procured a loan of $3,000 and secured payment of the same by mortgage upon the homestead, in the execution of which the plaintiff joined. All of the money realized from this loan was used by Jacob Keller in the payment of debts which he had previously contracted. The plaintiff's proof further showed that a few days prior to July 9, 1919, Jacob Keller entered into negotiations with one Henry Lehn for the sale of the homestead to Lehn; that as a result of these negotiations a bargain was made whereby Lehn agreed to buy the homestead, and as a consideration for the same to deliver twenty-five head of cattle, one horse, an unsecured note for $200, and assume payment of the $3,000 mortgage. Both Keller and his wife testified that, when Keller first spoke to the plaintiff about the sale of the homestead, she said that she would not sign the deed therefor with her husband, unless the cattle and horse, which were to constitute a part payment therefor, should be turned over to her, and that before the deal was made it was agreed between the plaintiff and her husband that the cattle and the horse should

be turned over to her in consideration of her signing the deed
to the homestead. The deal for the land was consummated on
July 9, 1919, when the plaintiff and her husband, together
with Lehn and his wife, went to Brady, and the deed to Lehn
was executed by Jacob Keller and the plaintiff. The cattle
and horse were not delivered at that time, for the reason that
Lehn did not want to surrender possession of them until his
deed had been recorded. After the deed had been recorded,
and on July 18, 1919, Lehn, pursuant to instructions given by
Keller on July 9, made a bill of sale of the cattle and horse to
the plaintiff. The cattle and horse remained in possession of
Lehn until July 15, 1919, when they were levied upon by de-
fendants under the writ of attachment as above set forth.

On the part of the defendants, the testimony disclosed sub-
stantially the same condition of facts above recited, except
as to the agreement between the plaintiff and her husband, on
which matter both Lehn and his wife testified that, after the
execution of the deed by Jacob Keller and the plaintiff, at
Brady, on July 9, and while the plaintiff and her husband,
together with Lehn and his wife, were driving home in an auto-
mobile, Keller said: "He wanted the bill of sale of the cattle
delivered to his wife, so that his creditors could not bother
him in his moving." While Keller was on the stand as a
witness for the plaintiff, he had been interrogated on cross-
examination about this statement, and practically admitted
having made it. The testimony all disclosed that during the
times mentioned Jacob Keller was insolvent.

Appellants specified several errors, the first two of which re-
late to the refusal of the court to give his offered instructions
2 and 3.

Offered instruction No. 2 was not applicable, for the reason
[1] that it does not conform to the theory of the case upon
which appellants rely; their theory, as disclosed in the final
brief and argument, being, not that the transaction between
the plaintiff and her husband was wholly, but only partially,
void, and that it should, in any event, be sustained to the

extent of the actual value of the plaintiff's dower interest in the land which she released. Upon this theory of the case the instruction, if it had been given, would have been misleading to the jury, and there was no error in its refusal.

Requested instruction No. 3, standing by itself, is the mere [2] statement of an abstract rule of law. No attempt was made in the instructions given by the court, or those offered by the defendants, to specifically apply the rule of law announced to any evidence in the case, or to connect it up with any rule laid down in other instructions, and the court did not err in refusing to give it. (*Surman* v. *Cruse*, 57 Mont. 253, 187 Pac. 890.)

In their brief filed after the final argument of the case before this court, counsel for appellants say: "The question presented for determination is whether a wife can accept and retain the entire consideration received for the transfer of lands belonging to her husband, in which she possesses only an inchoate right of dower, the husband being insolvent, against creditors of the husband." We think that states the proposition too broadly to fit the situation presented by this record; but, accepting counsel's general suggestion and stating it in a way to fit the facts of this case, we say: "The question presented for determination is whether the plaintiff could accept and retain a major portion of the selling price of her husband's federal homestead in consideration of joining with him in the execution of a deed therefor, he being insolvent, against the debt of his creditor, Lewis, which was contracted prior to the issuance of a patent for the homestead."

Section 2296, United States Revised Statutes (8 Fed. Stats. [3] Ann., 2d ed., p. 575, U. S. Comp. Stats., sec. 4551), relating to federal homesteads, provides: "No lands acquired under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." This provision applies to the Enlarged Homestead Act of February 19, 1909, Chapter 160 (35 Stats. at Large, 639 [8 Fed. Stats. Ann., 2d ed., p. 613,

*etc.*; U. S. Comp. Stats., secs. 4563–4568]). (*First State Bank v. Bottineau County Bank,* 56 Mont. 363, 8 A. L. R. 631, 185 Pac. 162.) In the case of *Ruddy* v. *Rossi,* 248 U. S. 104, 8 A. L. R. 843, 63 L. Ed. 148, 39 Sup. Ct. Rep. 46, it is held that this provision applies as well to debts contracted after final entry, and before patent, as to debts contracted before final proof. Therefore there can be no question but that the Keller 320-acre federal homestead could not in any event have become liable to the satisfaction of the Lewis debt mentioned in the attachment proceedings, and, being exempt from this claim, Jacob Keller could not have committed any fraud upon Lewis. by any sale or disposition which he made of it.

''As to exempt property there are within the meaning of the statute no creditors; and, as there is no restraint upon the debtor against selling and conveying such property, the motives with which such transfers are made do not concern the creditor. The debtor may sell, exchange, or give it away, and his creditor has no just cause of complaint; for, being exempt, it is no more beyond his reach after transfer than it was before.'' (Waples on Homestead and Exemption, 514, and cases cited; 12 R. C. L. 505.)

Our next inquiry is as to the effect of the alleged transaction [4, 5] between Jacob Keller and the plaintiff, by which, under the terms of an agreement entered into before the execution of the conveyance of the homestead to Lehn, a major portion of the consideration for the land was to be turned over to her in consideration of her joining in the execution of the deed. It may be said, in passing, that the verdict of the jury necessarily implied that this agreement was made as testified to by plaintiff and her husband.

Before a creditor can attack a transaction as being in fraud of his rights, it is incumbent upon him to show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his debt. Until this is done no injury appears. (*Stanley* v. *Snyder,* 43 Ark. 429.)

The rule, supported both by reason and authority, is that if, before the sale of exempt real estate, the husband makes a transfer of the money or property to be received therefor to his wife, to induce her to join in a deed for its conveyance, such money or property becomes the separate money or property of the wife, for the reason that at the time of the transfer the creditors had no interest in the property conveyed, and no right to subject it to the payment of their debts. (*Schroeder* v. *Gohde*, 123 Minn. 459, 6 A. L. R. 571, 144 N. W. 152; *Bailey* v. *Littell*, 24 Nev. 294, 53 Pac. 308.) Beyond question Jacob Keller could have conveyed his homestead to the plaintiff, with or without consideration, and his creditor, Lewis, could not have complained. She might immediately have conveyed the same to Lehn, and clearly Lewis could not have complained of the transaction. What the parties did do accomplished the same result in another way.

Counsel for appellants contend that the rule above announced does not apply to the facts in this case, because it has reference to homestead exemptions under state laws, which exemptions are absolute and unconditional, and find their justification under the police powers of the state, exercised for the protection of the head of a family, which exemption is absolute in character, and attaches to property which a creditor can in no manner whatever interfere with, and permits the owner to transfer the property as he will, with or without consideration. We fail to distinguish in what respects the conditions suggested by counsel are not fulfilled by the facts in this case.

As to the claim of Lewis against Jacob Keller, the nonliability of the homestead therefor was absolute and unconditional, the authority therefor being found in the federal statute, which declared that it should not "in any event become liable to the satisfaction" of this debt, because it was "contracted prior to the issuance of the patent therefor"; and this court has declared that this is "one of the conditions attached to the grant as an additional inducement to secure

settlement of the public domain." (*First State Bank* v. *Bottineau County Bank, supra*.) So far as the Lewis debt was concerned, the homestead could not be interfered with. Jacob Keller could have transferred it as he willed, with or without consideration, and by doing so would not have injured Lewis, because the latter could not have subjected it to his debt "in any event."

For the reasons above given, we answer the formulated question in the affirmative, and assert that the plaintiff could accept and retain a major portion of the selling price of her husband's federal homestead in consideration of joining with him in a deed therefor, he being insolvent, against the debt of his creditor, Lewis, which was contracted prior to the issuance of the patent.

We have given consideration to the other matters urged by counsel for appellants, but find nothing suggested which requires or warrants a reversal of the judgment. However, an examination of the evidence upon which the jury based its finding that the plaintiff had suffered special damages in the sum of $425 as the profits which would have accrued to her from the milk and cream that would have been produced by the ten head of milch cows, if she had not been deprived of their use by the defendants, and that she had expended $150 in pursuing the property, convinces us that it is wholly insufficient to sustain the verdict and judgment for any amount whatever upon either of those items, and that the judgment should be reduced in the sum of $575.

It is ordered that the cause be remanded to the district court, that the judgment be modified by reducing the amount thereof in the sum of $575, and, when so modified, it is affirmed. The order denying a new trial is affirmed. Two-thirds of the costs of appeal will be paid by appellants, and one-third by respondent.

ASSOCIATE JUSTICES COOPER and HOLLOWAY concur.

[66 Mont. 144.]

MR. CHIEF JUSTICE CALLAWAY: Notwithstanding the well-written and able opinion of Mr. Justice Stark, I think the court has not reached the right result in this case.

The Keller land, being a federal homestead, was not "liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." (Sec. 2296, U. S. Rev. Stats., 8 Fed. Stats. Ann., 2d ed., p. 575, sec. 4551, U. S. Comp. Stats.)   This beneficent statute "was designed to provide the homesteader and his family sufficient land upon which to make a home." (*First State Bank* v. *Bottineau County Bank,* 56 Mont. 363, 8 A. L. R. 631, 185 Pac. 162.)   It was the purpose of Congress to encourage the settlement of the public domain, by fostering individual ownership and thus creating homes upon the land, and the wisdom of the policy is clear in these days, when the rush of the people to the cities is an alarming phase of our national life.

As observed in the decision above referred to, the provision was designed solely for the benefit of the homesteader, and not for antecedent creditors. The protection "exists, regardless of the value of the homestead, or the value of any other property the claimant may own, and regardless of the fact that the claimant may own and occupy another homestead exempt under state laws." (*Ritzville Hardware Co.* v. *Bennington,* 50 Wash. 111, 126 Am. St. Rep. 894, 96 Pac. 826.)   But it goes no further. Strictly speaking, it is not an exemption statute. (*First State Bank* v. *Bottineau County Bank, supra.*)   The statutory protection to the homesteader ceases the moment the land is voluntarily disposed of by him. The proceeds of the sale are not exempt; they are liable to be taken for the payment of his just debts. (*Ritzville Hardware Co.* v. *Bennington, supra; McIntosh* v. *Aubrey,* 185 U. S. 122, 46 L. Ed. 834, 22 Sup. Ct. Rep. 561 [see, also, Rose's U. S. Notes] ; 25 C. J. 78.)

Now, if Keller had taken the cattle in his own name, unquestionably they would have been subject to sale under the execution. So, in order to escape this situation, he and his

wife agreed that, as a consideration for her signature to the deed, she should have the cattle and the horse—practically the entire consideration upon the sale. If this be the law, then a man may do by indirection what he may not do directly. The foregoing is said in view of the fact that, as is stated in the majority opinion, it is fairly inferable that Keller and his wife intended to defeat the Lewis claim. They were selling out and leaving the country. This court has said that upon at least two occasions that a court cannot scrutinize too closely the relations between husband and wife with respect to business dealings between them where creditors are involved. The relation of husband and wife "is often a convenient means for the perpetration of a fraud." (*Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063; *Shepherd* v. *First National Bank,* 16 Mont. 24, 40 Pac. 67.) But here they adroitly and successfully beat the devil around the stump. The justification for this is that by the sale of the land, it being exempt from his claim, the creditor was no worse off than he was before, so he ought not to complain. I think an answer to this is that, while the creditor cannot complain, and should not be heard to complain, while the homesteader retains the land under the terms of the beneficent statute which enables him to acquire it, yet when he voluntarily turns it into property which would be subject to the payment of his debts, but for a devious turn on his part, a different rule obtains. The protection then ceases. He should not be permitted to beat his creditors by conniving with his wife, or his cousin, or his aunt. Otherwise, to use a timely illustration, a homesteader, who has become wealthy through the discovery of oil upon his land, may sell his land, leave the country, and defeat the just claims of his neighbor, who sold him the materials for house and fencing on the land, the blacksmith who shod his horses, and the storekeeper who furnished groceries and hardware for the family while the homesteader was going through the hard period of perfecting his title. All the man has to do is to arrange with his wife that she shall re-

.ceive all the proceeds of the sale or else refuse to sign the papers!

The cases supporting the majority opinion seem to relate to dealings with homesteads exempt under state laws, yet we find that every sort of fraudulent dealing with these, where creditors are affected, is not permitted. This statement finds warrant in 12 R. C. L. 507, where, after stating the rule followed by the majority of the court, we find this in the text: "It is, however, no denial or contradiction of the foregoing statements to say that there are dealings with exempt property which may operate as a fraud on creditors and give them a right of action under the statute against fraudulent conveyances. * * *" This is sustained by *Kettleschlager* v. *Ferrick,* 12 S. D. 455, 76 Am. St. Rep. 623, 81 N. W. 889, and cases cited in that opinion. These authorities sustain my view. Keller had sold his homestead and thereby abandoned it. The wife never had any right in it, as she would have had were it a state homestead. All she had in it was her inchoate right of dower. In such case she was entitled to the consideration for the transfer only to the extent of the actual value of the dower right released by her. (*Darling* v. *Hanks* (Ky.), 42 S. W. 1130; *Huwe* v. *Knecht,* 10 Ohio App. 487; *Glascock* v. *Brandon,* 35 W. Va. 84, 12 S. E. 1102; *Hollowell* v. *Simonson,* 21 Ind. 398; *Brown* v. *Rawlings,* 72 Ind. 505; *Jarboe* v. *Severin,* 85 Ind. 496; *Moore* v. *Greene,* 145 Fed. 472, 76 C. C. A. 242; *Herold* v. *Barlow,* 47 W. Va. 750, 36 S. E. 8; *Strayer* v. *Long,* 86 Va. 557, 10 S. E. 574.) But in the lower court not a word was said about her dower right.

Furthermore, the right to claim property as exempt is a personal privilege which may be waived. (*Tetrault* v. *Ingraham,* 54 Mont. 528, 171 Pac. 1148; 25 C. J. 117, sec. 204, p. 122.) Not at the time the cattle were attached, nor when she made the claim for their release from the sheriff, nor at the trial in the district court, did plaintiff contend that the property attached was exempt from seizure. In the court

below it seems that her claim was based upon the proposition that the transaction was one between herself and Lehn, the basis of which was that she refused to sign the deed for the land unless she got the consideration for the same, that is, the cattle and the horse—in fact, all but the $200 unsecured note. Under these circumstances, it may be said that she should not be heard to assert that the property was exempt. (25 C. J. 117, 122.) It may be argued that, as she was not the attachment debtor, she had no claim of exemption to assert; but in this court she contends that the transfer of the property cannot be attacked for fraud, because it was exempt. Certainly, without this exemption feature, she cannot be permitted to hold the property. (*Moss* v. *Jenkins,* 146 Ind. 589, 45 N. E. 789.) Therefore she is in no better position than her husband would be. (See *Redfield* v. *Stocker,* 91 Iowa, 383, 59 N. W. 270; *Hombs* v. *Corbin,* 20 Mo. App. 497.)

In my judgment, the *bona fides* of this transaction should have been inquired into by the jury; but it was not. It was directly raised by the defendants in offering two instructions which should have been given. I do not agree that instruction No. 3 states simply an abstract proposition of law. It is substantially a correct declaration of the law. There was competent testimony to support it. "A litigant has a right to have a correct declaration of the law given upon any material point in the case where he has offered competent testimony tending to sustain that theory." (*Strickland* v. *Smith,* 131 Ark. 350, 198 S. W. 690.) Conversely, "it is not error to state correctly an abstract proposition of law, in the absence of any request that it be explained or enlarged upon." (1 Randall's Instructions, sec. 122.) The instructions given the jury were tantamount to a directed verdict for plaintiff, and this not upon any theory which was presented in this court, unless impliedly upon the theory that the signature of the wife to the deed was ample consideration for the transaction.

As the case is to be affirmed, I agree that the judgment should be reduced in the sum of $575 for the reasons stated by Mr. Justice Stark.

I think the judgment should be reversed, and a new trial ordered.

Mr. Justice Galen concurs in above dissenting opinion.

