**WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, a Nebraska Corporation, licensed to do business in the State of Tennessee, Plaintiff,**

**v.**

**The BANK OF WAYNESBORO, Defendant/Appellee,**

**and**

**Robbie Roberta Staggs, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Aug. 21, 1991.

Application for Permission to Appeal Denied by Supreme Court Feb. 24, 1992.

---

W.C. Keaton, Keaton, Turner & Spitzer, Hoenwald and Ray Hollis, Waynesboro, for defendant/appellee Bank of Waynesboro.

Randy Hillhouse, Freemon & Hillhouse, Lawrenceburg, for defendant/appellant Robbie Roberta Staggs.

FARMER, Judge.

This is an appeal from the trial court's granting of a summary judgment in favor of the defendant, Bank of Waynesboro, thereby holding that they were entitled to certain life insurance proceeds.

In September of 1981, the deceased, Lewis Evans Staggs, purchased a five (5) year renewal term life insurance policy, certificate no. 3873465, with Woodmen of the World Life Insurance Society (hereinafter "W.O.W."). This term policy had a face amount of $75,000. On January 11, 1982, the deceased and his wife, Robbie Roberta Staggs, executed an "Assignment of Benefits Certificate as Collateral" (hereinafter "Certificate of Collateral") by which they assigned and transferred to the Bank of Waynesboro (hereinafter "Bank") the $75,-000 benefits under the policy, certificate no. 3873465.[1] On April 8, 1986, in an effort to consolidate various debts, the Staggs executed a promissory note payable to the Bank for the sum of $81,528.80. As security for the note the Staggs pledged a truck-tractor, two trailers and assigned "Seventy-five thousand dollars ($75,000) Woodmen of the World Insurance Policy." However, as discussed hereinafter, there is a dispute as to whether the policy assignment language was on the note at the time of execution.

On June 14, 1985, the decedent converted his term life insurance, certificate no. 3873465, into whole life insurance, certificate no. 4266974. The effective date on this conversion was July 1, 1985. Subsequently, Mrs. Staggs and the decedent filed bankruptcy. The Bank filed a claim in the bankruptcy action and listed its collateral

---

1. Specifically the Assignment of Collateral provided:
   A. For Value Received the undersigned hereby assign, transfer and set over to **The Bank of Waynesboro of Waynesboro, TN** its successors and assigns, (herein called the "Assignee") Benefit Certificate No. 3873465 issued by the **Woodmen of the World Life Insurance Society** (herein called the "Insurer") and any supplementary contracts issued in connection therewith, upon the life of **Lewis Evans Staggs** of Wayne County Tennessee....

as a 1982 Freight liner, 1979 42 foot Trial Mobile, and a 1982 Fontane 45 foot. The Bank later sold the collateral and collected the proceeds. After the Staggs experienced financial difficulties the Bank paid the premiums to maintain the life insurance policy on the decedent's life. On August 28, 1989, Lewis Evans Staggs died. The W.O.W. life insurance policy, certificate no. 4266974, had benefits of $77,612.05 at the time of Staggs' death. Both the Bank and Mrs. Staggs claimed entitlement to the insurance proceeds. W.O.W. filed an interpleader action to determine who was entitled to the disbursement. The trial court held that:

1. There is no genuine issue as to any material fact, and the Defendant, The Bank of Waynesboro, is entitled to a judgment as a matter of law.

2. It is admitted in the answer of the Defendant, Robbie Roberta Staggs, that she and her deceased husband did execute the assignment of the life insurance policy issued by the Plaintiff, Woodmen of the World Life Insurance Society, to the Bank of Waynesboro. Said assignment provided that "for value received, the undersigned hereby assign, transfer, and set over to The Bank of Waynesboro, Tennessee, its successors and assigns, therein called the 'assignee', Benefit Certificate No. 3873465, issued by the Woodmen of the World Life Insurance Society, therein called the 'insurer', and any supplementary contracts issued in connection therewith, upon the life of Lewis Evans Staggs of Wayne County, Tennessee ..." There was a supplementary contract issued upon the life of the deceased, Lewis Evans Staggs, being Woodmen of the World Life Insurance Society Certificate No. 4266974, which is the insurance certificate upon which the interpleader action in this cause was filed.

3. The Defendant, The Bank of Waynesboro, is entitled to the proceeds of Woodmen of the World Life Insurance Society Certificate No. 4266974, it ap-

pearing without contradiction that the amount owed to said Bank is in excess of the amount of such insurance.

It is from this judgment that the appellant now appeals. The issues on appeal as set forth by the appellant are:

### I.

Whether the trial court erred in holding there were no material issues of fact as concerned the assignment of Woodmen of the World Insurance Certificate No. 4266974 by appellant's husband to the appellee.

### II.

Whether the trial court erred in holding that appellee was entitled to the proceeds of Woodmen of the World Life Insurance Certificate No. 4266974 stating it was uncontradicted the amount was owed when the appellant steadfastly denied owing this amount.

### I.

■ Ms. Staggs contends that she is entitled to the life insurance proceeds because her husband never assigned certificate no. 4266974 to the Bank. The Bank, on the other hand, argues that since the Certificate of Collateral also assigned "any supplementary contracts in connection therewith", then the whole life policy certificate no. 4266974 was also covered. As we have noted, the Certificate of Collateral assigned and transferred over to *"[t]he Bank of Waynesboro of Waynesboro, TN* its successors and assigns, (herein called the "Assignee") Benefit Certificate No. *3873465* issued by the *Woodmen of the World Life Insurance Society* (herein called the "Insurer") and any supplementary contracts issued in connection therewith, upon the life of *Lewis Evans Staggs* of *Wayne County Tennessee...."* The Certificate of Collateral also provided that the assignment was to "be held as collateral security for any and all liabilities of the under-

signed, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the Assignee...."

■ Where the language in a contract is clear and unambiguous then its interpretation is a matter of law for the court to determine. 88 C.J.S. *Trial* § 217 (1955). The word "supplemental" by its own terms means an addition, something that adds to or fills a void or deficiency, or something that meets a want or supplies what is lacking, *In re Bridger Valley Water Conservancy Dist.*, 401 P.2d. 289, 291 (Wyo.1965); *Yarmuth Government Emp. Ins. Co.*, 286 Md. 256, 407 A.2d 315, 319 (1979); *Lost Creek School Tp., Vigo County v. York,* 215 Ind. 636, 21 N.E.2d 58, 60 (1939); Webster's Third New International Dictionary 2297 (1971), without significantly changing the effect of that which is already in existence. *First State Bank of Shelby v. Bottineau Co. Bank,* 56 Mont. 363, 185 P. 162, 164 (1919); *Board of Education of Terrace Park v. Guckenberger,* 60 Ohio L.Abs. 29, 100 N.E.2d 304, 308 (1951).

The question becomes whether the whole life policy was a mere "addition to" the term policy or was the first policy surrendered or cancelled and a new policy undertaken. When the decedent decided to transfer his term life *into* whole life a "Change App." was executed to accomplish this transition. The change application contained in pertinent part the following provisions:

1. The heading at the top right says *"Change* App."

2. Section A of the Change application states: "The Member's Certificate MUST Accompany This Request for Change."

3. Section B indicates that certificate no. 3873465 was surrendered and cancelled.

4. Section C states the kind and amount of insurance being applied for.

5. Item 17 is headed "FOR CONVERSIONS ONLY" and states, among other things, the date on the new certificate.

6. Item 18 is headed "CHANGES TO EXISTING CONTRACTS" and sets out the effective date of the change in type of policy from term insurance to whole life insurance.

7. On page 2 of the Change application it is stated, among other things, that applicant has read the application and that:

> "3. The application for the term insurance *being converted*, plus this application will be considered to be the application for the new certificate." (Emphases added)

The decedent and Bank were both signatories on this change application. One part of the application indicates that it merely changes the existing contract, while another provision suggests that the original policy was cancelled. Although the parties make much of the ambiguity in this change application, since the policies are actually part of the record itself this controversy is easily resolved. A review of the actual policies themselves indicates that a new policy was undertaken. The whole life policy is not a mere addition to or a supplement to the term policy. These are two completely independent life insurance policies. Since the certificate only assigned life insurance policy no. 3873465 and any "supplementary contracts issued in connection therewith," then we cannot say as a matter of law that the whole life insurance policy no. 4266974 was included thereunder.

The Bank also contends that they are also entitled to the life insurance proceeds because the promissory note executed on April 8, 1986 assigned as security "Seventy-five Thousand Dollars ($75,000) Woodmen of the World Insurance Policy." If this language was in the note at the time of execution, then it obviously included the whole life policy certificate no. 4266974. However, Mrs. Staggs contends that this language was not on the note when it was executed. In an effort to overcome the Bank's summary judgment motion Mrs. Staggs submitted the affidavit of Betty Rich, a former employee of the Bank, which indicated that the phrase "assignment Seventy-five Thousand Dollars ($75,-000) Woodmen of the World insurance policy" might have been placed on the promis-

sory note after it was executed.[2] Ms. Rich stated that the loan officer, Ronnie Kelley, had "a lot" of promissory notes signed by the customers prior to the notes being completed.

Summary judgment can only be rendered when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.03 (1984). In ruling on a motion for summary judgment all of the evidence must be viewed in a light that is most favorable to the opponent of the motion and all legitimate factual conclusions must be drawn in favor thereof. It is only when there is no disputed issues of fact that an issue can be summarily decided. *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420 (Tenn.Ct.App.1985); *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.Ct. App.1983). Since there exists a controversy as to the validity of this assignment, we cannot say that this case should be summarily dismissed.

## II.

Mrs. Staggs also contends that the trial court erred in holding that the Bank was entitled to the full amount of the insurance proceeds. The Bank argues that it was uncontroverted that the entire amount was owing to them. Mrs. Staggs testified that she was never given credit for the items sold during the bankruptcy proceeding. Her testimony alone at least raises a genuine material issue of fact.

The judgment of the trial court granting summary judgment is reversed and the cause is remanded for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee for which execution may issue if necessary.

TOMLIN, P.J.(W.S.), and CRAWFORD, J., concur.

2. Specifically, Betty Rich's affidavit provided:

(1) That she resides at P.O. Box 16, Waynesboro, Tennessee;

(2) That she worked at the Bank of Waynesboro on two occasions, the first time being for approximately six (6) years prior to being off for sickness, and the second time from 1978 until 1987;

(3) That she was a secretary at the Bank of Waynesboro in 1978 for William Askins and for anyone else needing a secretary;

(4) That she did the majority of Mr. Askins' typing during his tenure with the Bank and she also did typing for Ronnie Kelley as well as the Board of Directors;

(5) That she was promoted to assistant cashier in approximately 1982, but that she still did her typing duties;

(6) That during this time period, promissory notes were prepared in the note department while assignments were typed by the secretaries;

(7) That prior to approximately 1983 the promissory notes were typed, but that at approximately that time a computer program was obtained which was used to complete the promissory notes;

(8) That the 1986 promissory note in controversy involving Lewis Staggs was prepared on the computer, as you can tell by looking carefully at it;

(9) That by looking at the 1986 note in question, you can tell that the phrase "Assign-

ment $75,000.00 Woodmen of World insurance policy" was obviously added at a later time from the first three listings on the security agreement as is shown by the left margin not being the same;

(10) That the Bank of Waynesboro's policy, which I always followed, provided that any collateral was to be specifically identified on the promissory note, which in the case of a life insurance assignment would mean that the policy number should have been included on the promissory note;

(11) That the Bank of Waynesboro policy was also that a separate assignment would be drafted and executed concerning the assignment of an insurance policy and one should have been prepared for the Insurance Policy Number 4266974 concerning Lewis Staggs if the Bank of Waynesboro was taking an assignment of that policy;

(12) That Ronnie Kelley had a lot of promissory notes signed by bank customers prior to their being completed, but I do not personally know if the 1986 note in question was signed in this manner or not;

(13) That I am no longer employed by the Bank of Waynesboro and have no interest in the outcome of this lawsuit other than I want the court to reach the correct result; and

(14) That I have personal knowledge of all matters set forth in this affidavit and could testify as to such matters at a trial in this case.