## McCleary v. Babcock, Treasurer, et al.

[No. 20,917. Filed October 30, 1907.]

1. PLEADING.—*Demurrers.*—*Form of.*—*Joint or Several.*—A demurrer alleging that "the defendants and each of them separately demur to the plaintiff's complaint, herein, for each of the following reasons," is several. p. 231.

2. PARTIES.—*Townships.*—*Interurban Railroads.*—*Injunction.*—*Taxation.*—*Subsidies.*—In a suit by a taxpayer against the county treasurer to enjoin the collection of an interurban railroad subsidy tax, the beneficiary company and the civil township upon whose property the tax was levied, are proper parties. p. 231.

3. CONSTITUTIONAL LAW.—*Statutes.*—*Enacting Clauses.*—The statute (Acts 1903, p. 233) having an enacting clause in form: "Be it enacted by the General Assembly of the State of Indiana," is not in conflict with the Constitution (Art. 4, §1), requiring the style of every law to be precisely in those words. p. 232.

4. CONSTITUTIONAL LAW.—*Statutes.—Amendments.*—The act of 1903 (Acts 1903, p. 233, §5465 Burns 1908), providing that the word "railroad," as used in prior statutes, shall be held to include interurban, suburban and street railroads, is not an amendment to such prior statutes, and is constitutional. p. 232.

5. WORDS AND PHRASES.—*"Amend."—Constitutional Law.*—The word "amend" as used in the Constitution (Art. 4, §21), providing how acts shall be amended, means to correct, reform, change or modify. p. 233.

6. STATUTES.—*Supplemental.—What Are.*—A supplemental act is one that adds something to the original statute without cutting down any of its provisions. pp. 233, 237.

7. CONSTITUTIONAL LAW.—*Statutes.—Supplemental.*—The enactment of supplemental statutes is not prohibited by the Constitution. pp. 233, 237.

8. SAME.—*Powers of Legislature.—Interpretations of.*—In determining whether the legislature had the constitutional right to enact certain statutes, the legislature's interpretation of its power is entitled to great weight. p. 234.

9. SAME.—*Statutes.—Supplemental.—Title.*—A supplemental act must be germane to the subject-matter of the original act, and must be such as would be clearly embraced within the title of such original act. p. 235.

10. SAME. — *Statutes. — Title. — Construction of.* — The courts, in order to sustain the constitutional validity of an act, will give to the words of the title thereof their most liberal meaning; and if the words are capable of two constructions, one rendering the act valid, and the other invalid, the former construction will prevail. p. 235.

11. WORDS AND PHRASES.—*"Railroad."—Statutes.*—The word "railroad," as used in our statutes, imports a road of a *quasi*-public character, constructed with fixed metallic rails and upon which carriages or cars are transported for the purpose of carrying passengers or freight. p. 235.

12. RAILROADS.—*Meaning of.—Statutes.*—The word "railroad" is a generic term, and as used in general statutes, includes all kinds of public-service roads composed of fixed metallic rails upon which are transported cars containing passengers or freight. p. 236.

13. CONSTITUTIONAL LAW.—*Statutes.—Supplemental.—Title.*—The title of a supplemental act needs only to identify clearly the act to which it is supplemental, the title of the original act being decisive whether the matter contained in such supplemental act is properly covered. p. 238.

14. SAME.—*Statutes.—Legislative Interpretation of, by Subsequent Act.—Title.*—A subsequent act, providing a rule of construction

for a prior act, and which is not in terms amendatory, and which is covered by the title of the original act, is not governed by the constitutional provisions (Art. 4, §21), providing that no act shall be amended by a mere reference to its title. p. 238.

15. STATUTES.—*Construction.*—*Application to Subsequent Conditions.*—The general rule of construction permits the application of general statutes to conditions arising subsequently, and which were unknown at the passage of the statutes. p. 239.

From Kosciusko Circuit Court; *Vinson Carter*, Special Judge.

Suit by Joseph McCleary against James Babcock, as county treasurer of Kosciusko county, and others. From a decree for defendants, plaintiff appeals. *Affirmed.*

*Levi R. Stookey, T. Wayne Auglin, Vincent Foster, Walter Olds* and *Samuel O. Pickens*, for appellant.

*William D. Frazer, James R. Frazer, Arthur F. Biggs, Robert J. Loveland* and *John D. Widaman*, for appellees.

HADLEY, C. J.—The principal question in this appeal involves the construction of the statutes of the State concerning the voting of aid to interurban railroads incorporated under the street railroad act.

In July, 1904, a petition, signed by more than twenty-five resident taxpayers and voters of Wayne township, Kosciusko county, was filed with the board of county commissioners, praying said board to order an election for the purpose of voting upon the question of donating to the appellee Winona Interurban Railway Company, a corporation organized under the statutes for the incorporation of street railroad companies, $25,000, as aid to appellee company in the construction of its railroad through the township. The prayer was granted, and the election held, which resulted favorably to the donation. The board of commissioners ordered the levy to be made, and the same was placed upon the tax duplicates of Wayne township, against appellants, who were taxpayers of said township, and said duplicates placed in the

McCleary v. Babcock—169 Ind. 228.

hands of appellee Babcock, as treasurer of the county, for collection.

Whereupon this suit was commenced by appellant for himself and eighty-five others, to enjoin the collection of the tax.

1. The complaint is in one paragraph. To the complaint each of the defendants filed a demurrer, the substantial part of which was in these words: "The defendants and each of them separately demur to the plaintiff's complaint, herein, for each of the following reasons." The court sustained the demurrer of each of the defendants, and the plaintiff declining to plead further, judgment was rendered against him.

The complaint is based upon the theory that there is no valid law of this State authorizing the levying of a tax in aid of interurban railroads, and that the tax complained of is, therefore, illegal and void. And in his contention it is conceded by appellant that if the act approved March 9, 1903 (Acts 1903, p. 233. §5465 Burns 1908), is a valid act, the statute in controversy has legal sanction, and the complaint is insufficient on demurrer. The demurrer in form is several, and not joint, as to the demurrants, as questioned by appellant.

Furthermore, there is no doubt that the suit may well be brought as to some and not as to others of the defendants, 2. but the defendants were all made parties on the plaintiff's own motion, and the railway company, being the sole beneficiary of the tax, and Wayne township, the civil body, having voted the tax, and both being in danger of having the tax and its benefits swept away by plaintiff's suit, are proper, if not necessary and indispensable, parties. And if it shall turn out that the supplemental act of 1903 is constitutional and the complaint without foundation, then it can make no difference to appellant whether the railroad or township were proper parties to his suit.

Then is the act of 1903, *supra,* constitutional? It is claimed that the act is in derogation of the Constitution of

Indiana in two particulars: (1) Because it has no enacting clause, as required by §1, article 4, of the Constitution; (2) if intended as an amendment to the act of 1869, it is void for failure to set forth in full the section as amended in accordance with §21, article 4, of the Constitution. It is sufficient to say, once for all, that said act of 1903 has an enacting clause in the precise language of the Constitution, and hence the act is not obnoxious to §1, article 4, *supra.*

The first legislation authorizing the voting of aid to railroads was approved May 12, 1869 (Acts 1869, p. 92), and entitled, "An act to authorize aid to the construction of railroads by counties and townships taking stock in, and making donations to, railroad companies." The act of 1903, *supra,* has a title covering more than two printed pages, and begins thus: "An act supplemental to an act entitled 'An act to authorize aid to the construction of railroads by counties and townships taking stock in, and making donations to, railroad companies,' approved May 12, 1869; also supplemental to an act entitled," etc.; and in like manner proceeding to recite that said proposed act was supplemental to all the acts, either original, supplemental or amendatory, affecting the original act of 1869, setting each act forth specifically by title and date of approval, all of which occupy so much space that we do not feel justified in quoting.

The enacting section, in substance, is as follows: Be it enacted by the General Assembly of the State of Indiana, that wherever the word railroad occurs in either section of the act of May 12, 1869, or in any section of any subsequent act, amendatory, or supplemental to said act of 1869, here setting forth such acts by title and date of approval, the same "shall be extended to and held to include every kind of street railroad, suburban street railroad, or interurban street railroad * * * by whatever power its vehicles are to be or are transported."

It will be observed that the new act makes no change in any existing statute relating to the subject of giving aid to railroads. Its passage did not affect the force and vigor of any previous legislative provision relating to the subject. If the act of 1869, *supra,* and all subsequent, supplemental and amendatory legislation applied solely to what are commonly called steam roads, as contended by appellant, that could make no difference to them, for every such company may yet proceed in every particular the same as if the act of 1903 had not been passed. It is plain that the act of 1903, *supra,* is not, in effect, an amendatory act. To amend a statute is to alter it; to annul or remove that which is faulty, and substitute that which will improve it. An amendment means to "change or modify in any way for the better." Webster's Int. Dict. And see *Diamond* v. *Williamsburgh Ins. Co.* (1873), 4 Daly 494, 500. The word "amend" is synonymous with "correct, reform, rectify." It means a correction of errors, an improvement, a reformation. It necessarily implies something upon which the correction, alteration, and improvement can operate. Something to be reformed, corrected or improved. *In re Pennsylvania Tel. Co.* (1886), 2 Chest. Co. Rep. 129, 131.

A supplemental act has quite a different meaning. "It signifies something additional, something added to supply what is wanting." Webster's Int. Dict. It is that which supplies a deficiency, adds to, or completes, or extends that which is already in existence, without changing or modifying the original. *State, ex rel.,* v. *Board, etc.* (1898), 16 Ohio C. C. 218, 221; *Rahway Sav. Inst.* v. *Rahway* (1890), 53 N. J. L. 48, 20 Atl. 756.

Since the adoption of the Constitution of 1851 it has been the custom of the General Assembly to pass remedial laws of the character of the one under consideration.

A few instances from among a large number must suffice.

In 1853 (Acts 1853, p. 107) there was passed a similar act

to permit railroad companies to file a certified copy, in lieu of original articles of incorporation, with the Secretary of State.

In 1863 (Acts 1863, p. 48) a supplemental act was passed making certain directors of corporations, existing by virtue of previous laws, liable for declaring dividends in certain cases.

In 1865 (Acts 1865 [s. s.], p. 114) a supplemental law was enacted extending to life insurance companies certain privileges conferred on fire insurance companies by previous laws. At the same session (Acts 1865 [s. s.], p. 120) another supplemental act was passed, which provided that the act should apply to and embrace all sales of railroads, under judicial decree, at any time made, whether said sales may have occurred before or after the passage of the act.

In 1889 (Acts 1889, p. 38) an act was passed declaratory of the meaning of certain mining terms appearing in statutes of former dates.

In 1891 (Acts 1891, p. 423) another act was adopted supplemental to all the acts then in force, concerning the organization of manufacturing and mining companies, extending to stock-yard companies, organized under former statutes, certain additional rights and powers. For further list see *State* v. *Gerhardt* (1896), 145 Ind. 439, 455, 33 L. R. A. 313.

There is no express provision of the Constitution for supplemental legislation, so called, but it has been so long indulged in by the General Assembly, and so long acquiesced in, and unquestioned by the people, that the important rights that have accrued and become settled by such legislation during the past half century should not now be disturbed, nor the legislative power to pass such laws be considered an open question. It should be further said, however, that courts, in considering questions relating to the constitutional

8. power of the General Assembly, in matters of legislation, give great weight to the assembly's own interpretation of such power, as the same is manifested by its con-

tinued and repeated exercise for a long period. *State* v. *Gerhardt, supra,* and authorities collated; *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 37 L. R. A. 189.

It is well established, however, that supplemental matter must be germane to the subject, as expressed in the title of the original act; that is, the supplemental matter

9. must be of a character which, if contained in the original act, would be clearly embraced within its title.

Invoking the rule, appellant contends that the act of March 9, 1903 (Acts 1903, p. 233), is not germane to the subject-matter, and title of the act of 1869, *supra,* and subsequent, amendatory, and supplemental acts, as enumerated in the title of the act of 1903, his insistence being that the two statutes relate to corporations organized for different and distinct purposes.

We must examine the question under the guidance of the well-established rule of construction, that, to sustain legislative action, courts will liberally construe the title to

10. the act, and accord to the words employed their fullest and broadest meaning to uphold the law; and, if the language is susceptible of two constructions, one inimical, and the other in support of the act, the latter will be adopted. This rule is clearly stated in *Hargis* v. *Board, etc.* (1905), 165 Ind. 194; *Board, etc.,* v. *Albright* (1907), 168 Ind. 564.

Technically a railroad is a way or road upon which iron rails are laid for wheels to run on, for the conveyance of heavy loads and vehicles. *Dinsmore* v. *Racine, etc.,*

11. *R. Co.* (1860), 12 Wis. 725. The term "railroad," as employed in our general legislation, relates to institutions of a *quasi*-public character; to highways or roads constructed by the authority of the state, with fixed metallic rails upon which public carriers may propel their carriages or cars speedily in the transportation of passengers and freight. Any way or road having these characteristics is a

railroad. It is the mode of construction and chartered use, and not the motive power that determines the character of a railroad. It is declared in the original act providing for the incorporation of railroads that they shall have power to convey, on their railroads, persons and property by the force and power of steam, animal, or any mechanical power, or any combination of them. 1 R. S. 1852, p. 409, §5195 Burns 1908, cl. 8.

The term railroad is generic, and embraces all species of road constructed and chartered with the above-mentioned attributes. 2 Rapalje & Lawrence, Law. Dict., 1061; 1 Wood, Railroads (Minor's ed.), p. 1; *Fulton* v. *Short Route R., etc., Co.* (1887), 85 Ky. 640, 4 S. W. 332, 7 Am. St. 619; *Bloxham* v. *Consumers, etc., St. R. Co.* (1895), 36 Fla. 519, 18 South. 444, 29 L. R. A. 507, 51 Am. St. 44. One may be operated with heavy and infrequent trains, another with single and frequent cars. The real difference is only a matter of degree. At the time of the passage of the act of 1869 there was in use at least two kinds of railroad, viz., the great lines of state and interstate roads, operated by steam-power, and the city street or horse railroad, similarly constructed and operated, both common carriers, and both dispensing in large measures like conveniences and benefits to the general public.

That the legislature has regarded all kinds of railroads as belonging to the same genus is manifest from the recent numerous statutes wherein, under the term "railroad" expressed in the title, legislation has been accomplished affecting steam, electric, interurban, suburban and street railroads. Such was the case in the following acts: "An act to amend section one of an act entitled 'An act to authorize railroad companies to consolidate their stock,' " etc. Acts 1897, p. 283. "An act concerning the location or construction of railroads upon any grounds owned," etc., by the State. Acts 1903, p. 216. "An act authorizing railroad companies, heretofore or hereafter organized under the general railroad

law but operating or intending to operate as interurban electric or street railways, to avail themselves of" certain privileges. Acts 1903, p. 271. "An act providing for the creation of a railroad commission," prescribing certain duties and obligations of "railroad" companies. Acts 1905, p. 83.

The title of the act of 1901 (Acts 1901, p. 121), is "An act supplemental to an act entitled 'An act concerning taxation,' " etc. Under this title the act provides "that the word 'railroad,' wherever it occurs in an act entitled 'An act concerning taxation' * * * shall, from and after the taking effect of this act, be considered, for all purposes of taxation, as including every kind of street railroad, suburban railroad or interurban railroad association, company or corporation," etc.

We direct special attention to some previous enactments as being the same in principle as the act under consideration.

7. For instance, the act of 1865 (s. s.), p. 114, under the title of "An act supplemental to an act entitled 'An act for the incorporation of insurance companies, defining their powers, and prescribing their duties,' approved June 17, 1852," provides for the incorporation of mutual life insurance companies "upon the same conditions and subject to the same duties and liabilities now regulating mutual fire insurance companies, so far as the same may be applicable."

The act of 1891, p. 423, under the title, "An act supplemental to the acts now in force concerning the organization of manufacturing and mining companies," gives to stockyard companies the right to construct railroads, lighting plants, gas and water-works, sewers, etc., and to exercise for such purpose all powers conferred on such companies, by an "act of December 21, 1865," etc.

The principle involved in the case at bar is well illustrated in the case of *Barton* v. *McWhinney* (1882), 85 Ind. 481. Section two of the act of 1875 (Acts 1875, p. 148) reads: "Hereafter the general laws of the State and amendments

thereto, approved December 2, 1872, for the uniform assessment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable.'' In the case referred to the statute was assailed as in violation of §21, article 4, of the Constitution, for failure to set out the amended section. The court, in upholding the statute, said on page 488: ''We do not consider the act of 1875 obnoxious to the Constitution. If section two had been embodied in the act of 1872, its validity could not have been assailed; and it is no less valid where it is found. It is not a revision nor an amendment of any act or section of an act. If by implication it repeals or modifies the provisions of any other law, it is not therefore unconstitutional.''

We have seen that new matter, which, if it had been embodied in the original act, would have been embraced within the subject expressed in the title, may be subsequently 13. incorporated into such original act by a supplemental or amendatory act; and this may be done without title, beyond a statement clearly identifying the original act to which the new proposition is to become supplemental, since the validity of the new matter must be determined by the title of the original act. *Brandon* v. *State* (1861), 16 Ind. 197; *Shoemaker* v. *Smith* (1879), 37 Ind. 122; *Bell* v. *Maish* (1894), 137 Ind. 226.

The act in controversy is constitutional under another canon of construction, namely, that when a statute provides a rule of construction for prior statutes, and which is 14. not in terms amendatory, it does not fall within the requirements of §21, article 4, of the Constitution, if covered by the title of the original act. As was said by this court in *Dequindre* v. *Williams* (1869), 31 Ind. 444, 450: ''It is not ordinarily the function of the legislature to interpret statutes, nor is such interpretation binding upon the courts as to past transactions. But as to matters occurring thereafter, such legislation guides all departments of the

government. Sedgwick, Stat. and Const. Law, 253. If a legislative construction be even plainly contradictory to the terms of the act construed, it must, nevertheless, be taken as a new enactment, changing the old law." To the same effect see *State, ex rel.,* v. *Harrison* (1888), 116 Ind. 300; *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134. In the case of *State, ex rel.,* v. *Harrison, supra,* it is further stated, at page 307: "And it has been held that a statute declaratory of a former one, has the same effect upon the construction of such former act, in the absence of intervening rights, as if the declaratory act had been embodied in the original act, at the time of its passage." Citing, Endlich, Interp. of Stat., §365; *Smith* v. *State* (1867), 28 Ind. 321; *Jones* v. *Surprise* (1887), 4 New Eng. Rep. 292, 294.

Acts 1853, p. 107, Acts 1865, p. 120, Acts 1889, p. 38, Acts 1901, p. 121, are all statutes of this class, the validity of which has never been called in question. The act of 1889, under the title of "An act declaratory of the meaning and effect of the word 'mining' as used in chapter thirty-five of the Revised Statutes of Indiana, now in force," declares "that it was and is the intent and meaning of said word 'mining' as used in said chapter to cover and include the sinking, drilling, boring and operating wells for petroleum and natural gas."

In the act of 1901 (Acts 1901, p. 121), under the title of "An act supplemental to an act entitled 'An act concerning taxation,'" etc., it is enacted that the word "railroad," wherever it occurs in the act concerning taxation, approved March 6, 1891, shall be considered as including every kind of street railroad, suburban railroad or interurban railroad.

Appellee insists that if the act of March 9, 1903, had not been passed, interurban and suburban railroad companies would have had the right to accept aid from counties and townships under the act of May 12, 1869, even though such railroads were in 1869 wholly unknown. Under the view we have taken of the act of March 9, 1903,

the question here propounded becomes immaterial, and we do not decide it, though we concede that there is, at least, ground for the contention, arising under the rule that general statutes give way to special statutes upon the same subject. The principle is well illustrated by Maxwell, Interp. of Stat. (2d ed.), 93, as quoted in *Daniels* v. *State* (1898), 150 Ind. 348: " 'The language of a statute is generally extended to new things which were not known and could not have been contemplated by the legislature when it was passed. This occurs when the act deals with a genus, and the thing which afterwards comes into existence is a species of it.' "

Our conclusion is that the act of March 9, 1903, is constitutional and valid, and that the judgment of the court below should be affirmed.

Judgment affirmed.