LOST CREEK SCHOOL TOWNSHIP, VIGO COUNTY
*v.* YORK ET AL.

[No. 26,965. Filed May 22, 1939. Rehearing denied
October 4, 1939.]

*B. F. Small, A. L. Miller, Wallace, Randel & Wallace,* and *James & Allie,* for appellant.

*Paul Shafer, Thomas F. O'Mara,* and *Lyon & Abrams,* for appellees.

SHAKE, J.—This appeal presents two major questions. These are: (1) how are the terms of an indefinite contract of a permanent tenure teacher to be ascer-

tained; and (2) what remedies are available to the teacher when such a contract has been unlawfully breached by the school corporation?

On June 6, 1930, appellee York entered into a written contract with the trustee of Lost Creek School Township, Vigo County, to teach in and serve as principal of the Glenn High School therein for an eight and one-half months' school year, commencing on August 29, 1930, at an annual salary of $2,400. Prior thereto York had served as a teacher in said school township for more than five consecutive years. The contract of June 6, 1930, expired on May 1, 1931. For five years following York tendered his services to the trustee at or before the beginning of each school term and demanded employment as a permanent teacher of said township. His offers to teach were refused. In his complaint York set out the contract of June 6, 1930, and alleged that it had ever since been and was in full force and effect; that he had at all times stood ready and willing to perform the same; and he demanded judgment for damages for the breach thereof for the school years 1931-1932 to and including 1935-1936, at $2,400 per year, aggregating $12,400. The appellant answered by general denial and, also, that prior to the commencement of the school year 1931-1932 York resigned as a teacher of said township. York denied that he ever resigned and the cause was tried by the court without a jury. The contract of June 6, 1930, was introduced at the trial. There was no evidence of any other agreement entered into between the parties subsequent thereto. The court originally made a finding and rendered judgment in York's favor for $12,000, but pending appellant's motion for a new trial it entered an order that if York would remit $7,200 the motion for a new trial would be denied. A remittitur, in compliance with the court's order, was filed, and judgment was rendered for

$4,800. York filed a motion asking that interest be added to the judgment from June 1, 1933, but the motion was overruled for want of diligence on his part in the prosecution of the action. The errors assigned by the appellant relate to the granting of leave to appellee York to file the remittitur above referred to and to the overruling of the appellant's motion for a new trial. By the latter assignment it is charged that the decision of the court is not sustained by sufficient evidence and that it is contrary to law. Appellee York has assigned cross-errors upon the order requiring him to remit the sum of $7,200 or suffer a new trial to be granted and upon the overruling of his motion to modify the judgment with respect to interest.

Appellee York contends that the terms of the indefinite contract which he is seeking to enforce are to be found in the 1930 written contract, which was the last express agreement between the parties and the one under which he served immediately prior to his discharge by the school township. He says that in the absence of an express writing entered into between the parties after the expiration of the 1930 contract, it is continuing and supplies the terms and fixes the compensation which he is entitled to recover. To sustain his position he leans upon the language of section 1 of the act of 1927 (ch. 97, Acts 1927, §28-4307 Burns' 1933, §6003 Baldwin's 1934), where it is stated that, "upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period . . ." On the other hand, appellant denies that the 1930 contract supplies the terms of the teacher's indefinite contract. It asserts that, as a permanent tenure teacher, York has merely a functional relationship; a recognized right to be re-employed; an indefinite contract entitling him to a definite contract; and that until he acquires

such definite contract he has no rights that can be enforced in an action at law. It is therefore of first and prime importance to determine the nature of the "indefinite contract" referred to in the Teachers' Tenure Act and upon which appellee York is seeking to recover.

In 1933 the General Assembly undertook to repeal the tenure act in so far as it applied to school townships, and this promptly presented the question of the status of those who became tenure teachers before the repeal. This court took the position in *State ex rel. Anderson* v. *Brand* (1937), 214 Ind. 347, 5 N. E. (2d) 531, 913, 7 N. E. (2d) 777, 110 A. L. R. 778, that the tenure rights of a permanent teacher were purely statutory and not contractual, and were therefore subject to being dissolved by the repeal of the act out of which they arose. Subsequently the decision of this court was reversed by the Supreme Court of the United States. *State ex rel. Anderson* v. *Brand* (1938), 303 U. S. 95, 58 S. Ct. 443, 82 L. Ed. 685, 113 A. L. R. 1482. We respectfully bow in deference to the opinion and mandate of that high tribunal, and it therefore can not be gainsaid that appellee York is a permanent tenure teacher of Lost Creek School Township and the holder of an indefinite contract. We have carefully scrutinized the opinion of the Supreme Court of the United States in the Anderson case, *supra,* with a view of ascertaining the full import thereof to the end that our decision may be brought in harmony therewith. It does not appear that said court went further than to hold that the rights of the appellant therein arose out of contract, entitling them to protection under the Federal Constitution. We do not find that the precise nature of the contractual rights acquired, or the manner of their enforcement, was considered.

We deem it pertinent to note the place that the Teachers' Tenure Act of 1927 occupies in the legislative

scheme and its relationship to other existing statutes relating to the subject of teachers' contracts and compensation. It was pointed out by this court in *Board of School Comm.* v. *State ex rel. Wolfolk* (1936), 209 Ind. 498, 503, 199 N. E. 569, that in determining the nature and terms of a contract between a teacher and a school corporation under the tenure act, said act must be construed with the teachers' contract acts of 1899 and 1921 as constituting one law on the subject. The last section of the tenure act of 1927 (ch. 97, §6, Acts 1927, §28-4312 Burns 1933, §6008 Baldwin's 1934) provides that it "shall be construed as supplementary to an Act of the General Assembly, page 195, Acts 1921, entitled 'An act concerning teachers' contracts and providing for the repeal of conflicting laws.'" The functions of a supplementary act and its effect upon existing statutory law were clearly stated by this court in *McCleary* v. *Babcock* (1907), 169 Ind. 228, 233, 82 N. E. 453, where it was said:

"A supplemental act has quite a different meaning (from an act to amend.) 'It signifies something additional, something added to supply what is wanting.' . . . It is that which supplies a deficiency, adds to, or completes, or extends that which is already in existence, without changing or modifying the original."

The school act of 1921 provides:

"That all contracts hereafter made by and between teachers and school corporations shall be in writing; shall state the date of the beginning of the school term; the number of months in the school term; the total amount of the salary to be paid during the school year; and the number of payments that shall be made during the school year." Acts 1921, ch. 91, p. 195, §1, §28-4304 Burns 1933.

In view of the fact that the Teachers' Tenure Act of 1927 is a supplemental law and was not intended to

change or modify pre-existing statutes, but rather to add new provisions thereto, it must be concluded that no teacher's contract in this state, be it tenure or otherwise, can be enforced unless it complies with the provisions of the act of 1921, quoted above. This conclusion calls for us to say whether an indefinite tenure contract brought into being as alleged in the complaint of the appellee York, can be deemed to be.in writing and contain the specific terms required by the act of 1921. It seems clear that this can not be true, unless the tenure relationship had the effect of rendering York's 1930 contract a continuing one, so that it may be said to supply the essential elements with respect to the date of beginning of the period of service, the number of months in such term, and the amount of salary to be paid.

In *Spice Valley School Twp.* v. *Rizer* (1938), 214 Ind. 528, 15 N. E. (2d) 390, this court held that an action to enforce a tenure contract was not based upon the last executed written agreement and that such agreement was not a necessary exhibit to the complaint. In *School City of Peru* v. *State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N. E. (2d) 176, 1002, we said (pp. 261, 262) :

"There is nothing in the (Teachers' Tenure) Act specifying a particular position for any teacher. The Act provides that a teacher who has been employed continuously for five successive years, and thereafter enters into a teacher contract for further service, shall become a permanent teacher in such corporation. It does not specify that the teacher must hold the same position, but only that he is a permanent teacher in the school corporation.

\* \* \*

"It necessarily follows that there is reserved to the board of trustees full authority to either promote or demote any teacher in the school in the absence of a specific statutory restriction."

If the statute does not protect the tenure teacher in his position, and if he may be promoted or demoted in the discretion of the school authorities, it necessarily follows that no prior agreement can supply the terms required by the act of 1921, so as to authorize a recovery for the breach of such indefinite contract.

Granted that a permanent teacher's tenure rights arise out of contract and may not be abrogated by the school corporation or destroyed by the General Assembly, it does not follow that the indefinite contract created by the statute is, as such, enforceable in an action at law. It may, however, afford a basis for an action in equity to compel the school authorities to recognize the holder's rights and to give him the definite contract to which his indefinite contract entitles him. When he is armed with his definite contract and the school authorities violate it, he may then have an action for the breach thereof, as upon any other express contract. This construction does no harm to the spirit and purpose of the tenure act. In *State ex rel. Clark* v. *Stout, Trustee* (1934), 206 Ind. 58, 64, 187 N. E. 267, this court, speaking through Treanor, J., said:

"But in our opinion the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state and not upon a policy of granting special privileges to teachers as a class or as individuals."

It is inconceivable that the General Assembly ever intended, by the enactment of this statute, to create a situation whereby public funds exacted through taxation should be used to pay for services that were never rendered, or that a teacher should receive remuneration for services that were never performed. If, on the other hand, the school authorities were compelled by the mandate of a court of equity to give the tenure teacher the definite contract to which he is entitled, one

certain and specific as to date of beginning, duration, and compensation, the purposes of the statute will be achieved. It is hardly to be expected that such public officers would subject their governmental unit to liability by a deliberate breach of a contract executed pursuant to a court order. These are practical considerations, bearing upon the efficacy of the interpretation which we have adopted, but we do not deem them altogether out of place. Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship, or injustice; to favor public convenience; and to oppose all prejudice to public interests. Consideration of attendant evils and hardships may properly exert an influence in giving a construction to a statute when its language is ambiguous or uncertain and doubtful. *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 82 N. E. 1030. The sound public policy that sustains the tenure statute is fully accomplished when the re-employment of the permanent teacher is removed from the realm of caprice and political intrigue and is assured. To accomplish the desired end it is enough that the law provide a remedy that is summary and direct. An action for the breach of the so-called indefinite contract is not only unnecessary, it is unauthorized.

The use of the word "indefinite contract" in the tenure act is to be noted. The words "definite" and "indefinite" have long had widely different meanings in the law of contracts. It is not too much to presume that the General Assembly had these distinctions in mind when it employed the word "indefinite" in the Teachers' Tenure Act. To brand a contract as indefinite is to at once cast suspicion upon its enforceability. It is a fundamental rule of the law relating to the subject that an offer must be so definite in its terms, or require such definite terms in the acceptance,

that the promises and performances to be rendered by each party are reasonably certain.

> ". . . The law cannot subject a person to a contractual duty or give another a contractual right unless the character thereof is fixed by the agreement of the parties. A statement by A that he will pay B what A chooses is no promise. A promise by A to give B employment is not wholly illusory, but if neither the character of the employment nor the compensation therefor is stated, the promise is so indefinite that the law cannot enforce it, even if consideration is given for it." Am. Law Inst. Restatement, Contracts, §32a.

But it is recognized that:

> "A contract is not too uncertain for specific enforcement merely because the defendant is given a choice of performing in any one of several ways, whether formally expressed as an alternative contract or otherwise. He may properly be ordered to make the choice and to perform in accordance therewith." Am. Law Inst. Restatement, Contracts, §370d.

The rules stated were recognized and applied by the courts of this state many years ago and, coincidentally, this was done in cases where teachers sought to enforce indefinite contracts against school townships. The decisions were written before the enactment of the statute requiring such contracts to be in writing and long before the tenure law was conceived.

*Fairplay School Township* v. *O'Neal* (1891), 127 Ind. 95, 26 N. E. 686, was a case where a teacher sought to recover upon a contract of employment, by the terms of which the school trustee promised to pay her "good wages" for such services. In denying recovery, Elliott, J., speaking for the court, said (pp. 96, 97):

> "The question presented is whether there was such a contract as bound the school township and made it liable for damages for a breach. Our opinion is that there was no such contract. The

trustee is an officer clothed with statutory power, and all who deal with him are bound to take notice of the nature and extent of his authority. . . . The authority of the trustee respecting schools is vested in him for a public purpose, in which all the citizens of the township have an interest, and upon many phases of which they have a right to be heard by petition or remonstrance. This is especially so with regard to the employment of teachers. It is necessary, for the information of the citizens, that contracts made with teachers should be certain and definite in their terms, otherwise the citizens can not guard their interests nor observe the conduct of their officer. It is necessary that the contract should be definite and certain in order that when the time comes for the teacher to enter upon duty there may be no misunderstanding as to what his rights are. Any other rule would put in peril the school interests. Suppose, for illustration, that a contract providing for 'good wages,' 'reasonable wages,' 'fair wages,' or the like, is made, and when the time comes for opening the schools there arises a dispute as to what the compensation shall be, how shall it be determined, and in what mode can the teacher be compelled to go on with the duty he has agreed to perform? Until there is a definite contract it can hardly be said that a teacher has been employed, and the public interest demands that there should be a definite agreement before the time arrives for the schools to open, otherwise the school corporation may be at the mercy of the teacher or else there be no school. We think that a teacher can not recover from the school corporation for the breach of an executory agreement unless it is so full and definite as to be capable of specific enforcement."

*Jackson School Twp.* v. *Grimes* (1900), 24 Ind. App. 331, 56 N. E. 724, was a case where a teacher had received two dollars per day for one school year. He alleged that he was re-employed for another term upon the same terms and conditions upon which he had taught during the previous years, and attempted to recover for breach of the latter contract. He recovered

below, but the Appellate Court reversed the case and observed (pp. 332, 333, 334) :

"A contract between a trustee of a school township and the teacher, embracing the subject of the latter's right to teach one of the public schools in such township, should be so definite and certain as to embrace all the terms upon which such employment rests.

\* \* \*

"We can not accept evidence of what compensation appellee received the previous year in support of what he was to receive the ensuing year, and as there was no evidence as to what he was to receive, it leaves the contract so indefinite, uncertain, and ambiguous that it can not be enforced. A contract between a township trustee and a teacher, by which the latter agrees to teach a certain school, implies that he is to receive compensation for such services; but if the contract is silent as to what that compensation is to be, it is not such a contract as can be enforced, either against the teacher or the township."

In *Stiver, Tr.* v. *State ex rel. Kent* (1937), 211 Ind. 370, 1 N. E. (2d) 592, 7 N. E. (2d) 181, this court said (pp. 373, 374) :

"The legislative purpose in authorizing a new contract to be entered into by a tenure teacher and the employing school corporation was not to provide a means of terminating tenure, but to enable school corporations and their tenure teachers to adjust the provisions of indefinite contracts to current needs."

If the entering into of a new agreement with a tenure teacher is to be deemed an adjustment of the indefinite contract to meet current needs, and if it does not affect the tenure status, then it must follow, *a fortiori,* that a school corporation may impose terms upon a permanent teacher different from those which governed his previous service, so long as such terms are calculated to meet the current needs of the school corpora-

tion. What changes and terms are necessary and proper to best serve the interest of the school system must rest in the sound discretion of the administrative officials, though such functions must not be unreasonably or capriciously exercised.

"School boards, as a matter of common knowledge, have, in adopting their several schedules, classified teachers under various heads and fixed the compensation for the several classifications. . . . So, if the legislative intent, as expressed in . . . the statute, was to authorize the school board to classify its teachers, it necessarily follows that such classification must be reasonable, natural, and based upon substantial difference germane to the subject, or upon some basis having a reasonable relation to the work assigned. If the classification is arbitrary or capricious, and upon a basis having no relation to the kind or character of the work to be done, it would be void and unlawful, and in conflict with the statute." *Hutton et al.* v. *Gill* (1937), 212 Ind. 164, 168, 169, 8 N. E. (2d) 818.

Courts may not, under the pretext of finding a remedy, assume to exercise the discretion which the people, acting through their Legislature, have lodged in administrative officers and agencies. Judicial discretion is a thing apart from administrative discretion, and the latter will never be disturbed by the courts unless it is unreasonably exercised or is otherwise unlawful. This principle is applicable with peculiar force to the administration of the public school system. The fixing of teachers' salaries, the designation of their particular service, and of the dates of beginning and the length of the terms thereof are matters in the exclusive province of employing officials, except in so far as they are regulated by statute. This rule precludes recovery by a permanent teacher upon the *quantum meruit* for the alleged violation of his indefinite contract, because to sustain such a recovery would call for the court to substitute its judgment as

to the reasonable value of the teacher's service for that of the designated public officer. In *State ex rel. Mitchell* v. *Gray et al., School Trustees* (1884), 93 Ind. 303, 305, it was aptly said:

"Courts can neither employ nor discharge teachers, nor can they enter upon an examination to determine their capacity or lack of capacity, for that duty is committed to the local authorities. . . . Courts can not decide upon the merits and competency of teachers, for the plain reason that the law invests the local school officers with that duty. It is the theory of the law that the local authorities will justly perform that duty, and that, if they fail, the voters will displace them at the proper time and in the appropriate manner. At all events, no principle of law or justice will justify the courts in assuming the government of schools."

Since 1865 it has been the legislative policy of this state to prescribe qualifications for teachers in the public schools. Acts 1865, ch. 1, §34. Various types of licenses are now provided for, ranging from kindergarten teachers to superintendents of schools. Acts 1923, ch. 11, §9, §28-4209 Burns 1933, §5920 Baldwin's 1934. Since 1907 salaries for teachers have been more or less standardized. Acts 1907, ch. 101, §1. The present wage statutes fix salaries for different classes of service, with formulas for increases, based upon professional training, experience, and success. §28-4314 Burns 1933, §5998 Baldwin's 1934. The standards with respect to teachers' qualifications and compensation have been progressively increased since they were inaugurated. Employing officials are free to exact higher qualifications of their teachers and are permitted to pay larger wages than those required by the statutes. In the instant case the appellee York was employed as a high school teacher and principal at a salary of $2,400 per year, which was in excess of the minimum required by law. He claims that under his indefinite tenure con-

tract he is entitled to recover at that rate. If he is protected as to the rate of salary, he is likewise protected in the position of teacher and principal, which he formerly held. The same would be true as to the length of the term which he might be required to teach. This theory would lead to an anomalous situation and strike at the very vitals of the public school system. Under certain contingencies a tenure teacher may serve until he attains the age of 66 years. It would be a strained construction to hold that by the enactment of the tenure act the Legislature intended to create a situation whereby a teacher, much less a principal of a school, might be entitled to hold the same identical position for 25 or 30 or even 40 years. Many considerations short of those for which a tenure contract may be terminated might seriously affect the fitness of a particular teacher to fill a particular position. Likewise, a school corporation may, during a given period, be amply able to pay salaries substantially in excess of the minimum requirements but later, under the stress of economic pressure, find it necessary to reduce these to the lowest permissible level. The efficiency of the public school system as an integral agency of the state government requires that the duly constituted public officials remain unhampered and be permittted to exercise a sound and wise discretion in matters of this kind. The interpretation of the tenure act which the appellee York urges us to adopt would render this impossible. We are unable to accept it.

It may be noted in passing that recent enactments of the General Assembly indicate a legislative construction with respect to the Teachers' Tenure Act in complete harmony with what we have said. Chapter 77 of the Acts of 1939 provides for the continuation or renewal of teachers' contracts without express action of the parties thereto, but permanent teachers are expressly

excepted; chapter 155 undertakes to create a remedy whereby school corporations may be compelled by court order to reinstate or re-employ tenure teachers. It may reasonably be presumed that by the enactment of said chapter 155 the Legislature recognized that an adequate action at law could not be maintained for the violation of a permanent teacher's indefinite contract. These acts have not yet been promulgated and, of course, we express no views relative to their validity or construction.

Reverting to the questions presented by this appeal, as stated in the first paragraph of this opinion, we hold that: (1) a permanent tenure teacher's indefinite contract is a protected contractual right entitling the teacher to a succession of definite contracts with terms meeting the requirements of the pertinent statutes; and (2) such indefinite contract will not sustain an action for compensatory damages, but may constitute a basis for an action in equity to compel the school corporation to recognize the teacher's status and give him the definite contract to which he may be entitled. It is not necessary to consider other questions. In view of the conclusions reached it must be held that appellee York has misconceived his remedy and that the judgment is contrary to law.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.