Dorothy A. EWING, Appellant (Plaintiff),

v.

The BOARD OF TRUSTEES OF PULASKI MEMORIAL HOSPITAL; Pulaski Memorial Hospital; Richard L. Dilts; Daniel McBlaine; Betty Harold; James Clouse; Omer Clark; Janet Meyers; Jay Bonnell; Theodore H. Kittell; and Harold D. Hillman, Appellees (Defendants).

No. 2–1184–A–358.

Court of Appeals of Indiana, Second District.

Dec. 30, 1985.
Rehearing Denied March 10, 1986.

Roy D. Burbrink, Stevens, Travis, Fortin, Lukenbill and Burbrink, Plymouth, Russell D. Millbranth, Winamac, for appellant.

Dale J. Starkes, Daniel P. Murphy, Starkes and Murphy Law Offices, Winamac, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Plaintiff-appellant Dorothy A. Ewing (Ewing) appeals from an adverse decision of the Cass Circuit Court, challenging the trial court's entry of summary judgment.

We affirm.

### FACTS

The facts viewed in a manner most favorable to Ewing are as follows: On July 6, 1976, Ewing was discharged from her position as a nurse-anesthesiologist which she had held for nearly ten years. Thereafter, Ewing filed a five paragraph complaint against her employer, the Pulaski Memorial Hospital and the Board of Trustees of the Pulaski Memorial Hospital [hereinafter collectively referred to as the Hospital], and against several individual defendants. Ultimately, the trial court dismissed all claims against both the Hospital and the individual defendants. The trial court also granted summary judgment on all claims noting they were mooted by the granting of the motions to dismiss. Ewing appealed the

dismissals and the entry of summary judgment. By a memorandum decision, *Ewing v. Board of Trustees of Pulaski Memorial Hosp.* (filed March 17, 1982), Ind.App. No. 2–781–A–233, this court affirmed the trial court's dismissal of paragraphs two, three, and five of Ewing's complaint, but reversed the dismissal of paragraph one. We found that paragraph one of Ewing's complaint stated a claim for wrongful discharge, hence, dismissal was erroneous. We also found that the trial court erred in granting the motion for summary judgment on the wrongful discharge claim before a hearing on the motion was held. Consequently, we remanded this cause to the trial court for a hearing on the motion for summary judgment as to Ewing's wrongful discharge claim.

Upon remand, the trial court conducted a summary judgment hearing. Ewing's complaint alleged that on January 19, 1976 she and the Hospital entered into an employment contract for a period of one year. The Hospital's motion for summary judgment described Ewing as an employee at will. The parties stipulated that there were three pieces of documentary evidence upon which Ewing's employment contract was premised.[1] First, was an August 26, 1974 letter to Ewing from Theodore Kittell (Kittell), the executive director of the Hospital, which provided: "To ensure there are no difficulties in anesthesia scheduling due to loss of income on your part I am today placing you on a guaranteed annual in-

come. As long as you continue work full time this will be your 1973 gross plus 5.5 per cent." *Record* at 295. Prior to August 26, 1974, Ewing received as recompense a fee for each anesthetic she administered to a patient. Thereafter, she was on salary and paid biweekly. *Record* at 309.

The second document was a January 19, 1976 letter to Ewing from Kittle which provided, in part:

"Subject: Employment of second Anesthetist.

. . . .

In regard to your wage protection, in my communication of August 26, 1974, I stated you could expect a minimum income of $20,919.76. Adjusted for inflation with a factor of 8.6 for 1975 this currently would be $22,718.76. If this, or any other item, you feel needs to be discussed and reduced to writing we are certainly open to negotiation.

We have been unfair to you in the matter of continuing education. You are long overdue for an extensive three to four week intensive review of the newer developments in anesthesia. I, frankly, have not encouraged you to go because of the financial impact upon the hospital. When we hire a second anesthetist, I would like you to go for such a course at hospital expense.

Perhaps we could arrange for such training at Ohio State, where I understand a

---

1. Ewing maintains that all of the evidence of her contract of employment with the Hospital is contained in the three stipulated documents. *Appellant's deposition (October 19, 1983)* at 5; *record* at 78. Ewing's position that no evidence outside the writings supports her contract of employment is made clear by her counsels' comments at the summary judgment hearing:

   "THE COURT: Well, are you saying that the entire contract is contained in the documents, Mr. Millbranth?

   MR. STARKES [counsel for Hospital]: We've already stipulated that, I thought.

   THE COURT: No, we stipulated that these are all the documents but it's different. There's a different question as to whether the entire contract is in the documents.

   MR. MILLBRANTH [counsel for Ewing]: Your Honor, we are saying that the terms of the contract are in the documents.

   THE COURT: But are you, are you going to offer on your behalf parol evidence to show that there are additional terms or additional factors?

   MR. MILLBRANTH: No, your Honor.

   THE COURT: You're saying those documents are in?

   MR. MILLBRANTH: That's correct, your Honor.

   THE COURT: But the documents themselves don't say anything about term of employment, do they?

   MR. BURBRINK [counsel for Ewing]: We would submit that they do. They use the word annual in the body and they propose a salary that's obviously an annual adjustment of her other salaries."

   *Record* at 115.

friend of yours conducts the anesthesia training program.

I also feel you are entitled to more freedom regarding time off routinely and for vacations. It is not good for a person to be constantly on call.

I hope this correspondence conveys some of my concerns for the hospital and clarified my position in regard to anesthesia services. To not follow this course of action, I feel, would be a dereliction of my duty as Executive Director of the hospital."

*Record* at 294. As the third piece of documentary evidence, the parties stipulated that Ewing received pay stubs during the course of her employment with the Hospital. In her deposition, Ewing stated that, other than the evidence contained in the January 19, 1976 letter, she had no conversations with Kittell or anyone else from the Hospital defining the terms of her contract of employment. This corresponds with the statements of Ewing's counsel who informed the court at the summary judgment hearing that Ewing did not rely on any parol evidence to show additional terms, conditions, or factors supporting her allegation of an employment contract.

Kittell testified at the summary judgment hearing that the 1974 and 1976 letters were written to reassure Ewing about her level of income after other anesthetists joined the hospital staff. *Record* at 311. Additionally, Kittell testified that only the Board of Trustees had the authority to enter into contracts with employees, although he customarily signed the contracts as an agent of the Board. Counsel for the Hospital questioned Kittell if he recalled discussing with Ewing whether "if she wanted an employment contract, she would have to present her request to the Board of Trustees because you [Kittell] didn't have the authority to enter into such a contract?" *Record* at 319. Kittell answered yes. Thereafter, on May 18, 1976, Ewing attended the Hospital's Board of Trustees' meeting. Ewing requested "a contract for her professional services with the governing board," *record* at 130, and submitted a written contract for its consideration. Ulti-

mately, the Board declined to accept Ewing's written contract.

The trial court granted summary judgment in favor of the Hospital. In its memorandum granting summary judgment, the trial court observed that Ewing had failed to establish a contract of employment.

## ISSUE

Consolidated and rephrased, Ewing presents one issue on appeal:

Whether the trial court erred in granting summary judgment in favor of the Hospital?

## DECISION

PARTIES' CONTENTIONS—Ewing argues the trial court erroneously ignored controlling precedent and misapplied the summary judgment standard of review when it concluded that she did not have a contract for a definite term with the Hospital. The Hospital contends the trial court correctly applied the law when it determined that Ewing was an at-will employee.

CONCLUSION—The trial court did not err by granting summary judgment in favor of the Hospital.

Summary judgment is appropriate when the pleadings, affidavits, testimony, and products of discovery demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116; *Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170; Ind.Rules of Procedure, Trial Rule 56. A "factual issue is genuine if it cannot be foreclosed by reference to undisputed facts." *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143. A fact is material if it affects the outcome of the litigation. *Costello v. Mutual Hosp. Ins. Inc.* (1983), Ind.App., 441 N.E.2d 506, *trans. denied; Stuteville v. Downing* (1979), 181 Ind.App. 197, 391 N.E.2d 629. Therefore, entry of summary judgment is appropriate even though conflicting facts

on some aspects of a claim exist if there is no dispute or conflict regarding a fact which is dispositive of the action. *Woodward Ins., Inc. v. White* (1982), Ind., 437 N.E.2d 59.

■ To prevail in her action for wrongful discharge, Ewing must establish that she had a contract of employment for a specific duration that was improperly terminated. *Rice v. Grant County Bd. of Commr's* (1984), Ind.App., 472 N.E.2d 213, *trans. denied.* We acknowledge at the outset of our discussion that there seems to be some confusion in Indiana's employment contract cases. However, we can reach a conclusion in this case by reference to basic contract law: "It is fundamental contract law that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained." *Pepsi-Cola Gen. Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696, 699. Indiana courts have long required that

> "an offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain. * * * The law cannot subject a person to a contractual duty or give another a contractual right unless the character thereof is fixed by the agreement of the parties.' "

*Lost Creek School Township v. York* (1939), 215 Ind. 636, 644–45, 21 N.E.2d 58, 62 (citations omitted). *See also Cassidy v. Montgomery Ward Co.* (1940), 216 Ind. 490, 25 N.E.2d 235; *Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639, *trans. denied; Marshall v. Ahrendt* (1975), 165 Ind.App. 359, 332 N.E.2d 223.

■ A court may not create a contract for the litigants. *Pepsi-Cola, supra.* A court may neither revise a contract nor supply omitted terms while professing to construe a contract. *Gaw v. LaPorte Corp.* (1956), 126 Ind.App. 143, 130 N.E.2d 790. We agree with Judge Neal who concluded, "If the tenure [of an employment contract] is indefinite, the contract is unenforceable to the extent that it remains executory." *Pepsi-Cola, supra,* at 699. There-

fore, in an action for damages for breach of an express contract of employment for a definite term, the duration of the contract of employment is an essential element that must be included in the contract or the agreement is unenforceable to the extent that it is executory.

Ewing alleges, and the parties stipulated, that any evidence of an express employment contract could only be found in three documents: the August 26, 1974 letter; the January 19, 1976 letter; and the stipulation as to her pay stubs. She claims she is not an employee at will because, despite her bimonthly pay checks, the two letters state she is to be paid an annual salary. She cites us to *Holcomb & Hoke Mfg. Co. v. Younge* (1937), 103 Ind.App. 439, 8 N.E.2d 426, for the proposition that a contract for an annual term of employment may arise if an employer quotes an annual salary to an employee and the employee gives some mutuality or consideration in addition to his promised service. Ewing claims the letters quote an annual salary, therefore, she has a contract for a definite term beginning on the date of the January 19, 1976 letter and continuing annually thereafter.

In line with modern business practice, we will not *infer* a specific tenure of service merely from an employee's rate of pay. Annot., 93 A.L.R.3d 659 (1979). And, *Holcomb* does not persuade us otherwise; nor have we found any Indiana case citing *Holcomb* for the proposition that the rate of an employee's compensation determines the length of one's employment.

■ A careful reading of the three documents does not lead to a reasonable inference that the parties intended the tenure of employment to be an annual one. The documents are too vague and indefinite in this crucial regard. A statement of rate of pay is not a statement of duration of employment. Without some other more definite indication of the intent of the parties, we may not rewrite their contract for them. *Justice v. Stanley Aviation Corp.* (1974), 35 Colo.App. 1, 530 P.2d 984; *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 344 N.E.2d 118; *Singh v.*

*Cities Serv. Oil Co.* (1976), Okl., 554 P.2d 1367; 93 A.L.R.3d 654, *supra* at § 7(a).

■ Additionally, the facts and circumstances do not permit a reasonable conclusion that the parties intended the letters from Kittell to constitute an annual contract of employment. The evidence is undisputed that Kittell told Ewing only the Board of Trustees had the authority to enter into contracts with employees. Thereafter, in May of 1976, well after the January 19, 1976 letter, Ewing sought a contract of employment from the Board. Her own conduct defeats any reasonable inference that the parties intended the January 1976 letter to constitute a contract of employment for a definite term.

■ We might add that Ewing's reassertion of an oral contract in her affidavit opposing summary judgment, *record* at 5, is merely a legal conclusion and fails to raise a factual controversy that would prevent entry of summary judgment. *Indiana Univ. Hosp. v. Carter* (1983), Ind. App., 456 N.E.2d 1051.

As the duration of Ewing's tenure of service cannot be determined from the three documents which she has stipulated contain the entire agreement of her employment with the Hospital, the entry of summary judgment was proper.

We affirm.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Recognition by the majority that *Holcomb & Hoke Mfg. Co. v. Younge* (1937) 103 Ind.App. 439, 8 N.E.2d 426, has not been overruled prompts my dissent. We must either straightforwardly reject it or we must acknowledge that its holding leads to a reversal of this summary judgment. *Holcomb* holds that provision for an annual income in and of itself does not preclude a determination that the employment may be terminated at will.

*Holcomb* also holds, however, that if annual salary is the stated rate of compensation, the trier of fact may find that the duration of the period of employment is for a definite period, provided one or more additional factors are present. One such factor enumerated in *Holcomb* was stated to be:

"(2) if appellee's employment was an important one and of a kind that a temporary and indefinite employment of appellee would not likely have been made;" 8 N.E.2d at 429.

My colleagues summarily sweep the *Holcomb* decision aside, without rational justification except for generalized statements of contract law principles, and citation to *Pepsi-Cola General Bottlers, Inc. v. Woods* (1982) 1st Dist.Ind.App., 440 N.E.2d 696. In *Pepsi-Cola* there was no dispute that the contract of employment was for an indefinite period. The sole basis for the decision was that the employee's right of recovery, if any, rested upon promissory estoppel against the employer not upon the at will contract. (Pepsi-Cola had induced Woods to terminate her then present employment in reliance upon a promise of employment with Pepsi-Cola.)

The authorities relied upon by the majority do not reflect adversely upon the underlying premise of *Holcomb*. As I perceive that premise, as related to our case, it is that although a contract of employment may appear on the surface to be one terminable at will, if the compensation is stated to be at an annual salary *and* if the facts and circumstances permit a reasonable conclusion that the employment was of a nature to be more than casual, temporary, or indefinite, the employment may not be held *as a matter of law* to be at will.

Such is the case before us. The uncontraverted evidence before us would permit a trier of fact to find that Ewing's employment was intended to be for a one-year period. Kittle's letter of August 26, 1974, emphasized that Ewing was placed upon a guaranteed annual income in order to insure that there be no difficulties in anesthesia scheduling. I can construe this as nothing less than a statement by the hospital that Ewing's employment was impor-

tant and "of a kind such that a temporary and indefinite employment would not likely have been made." *Holcomb, supra,* 8 N.E.2d at 429.

I would reverse the summary judgment and remand for further proceedings.